James and Marion SMITH; and Spencer Smith, an infant, by his natural parents, James and Marion Smith, Plaintiffs–Appellees,

v.

Ronald REAGAN, as President of the United States; Julius W. Becton, Jr., as Director of the United States Federal Emergency Management Agency; Lee Thomas, as Administrator of the United States Environmental Protection Agency; the State of New York, by its Governor, Mario Cuomo, and The Love Canal Area Revitalization Agency, Defendants,

State of New York,
Defendant–Appellant.

No. 339, Docket 87–6163.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1987.

Decided March 1, 1988.

Stuart Miller, Asst. New York State Atty. Gen., Environmental Protection Bureau, New York City (Robert Abrams, New York State Atty. Gen., Albany, N.Y., of counsel), for defendant-appellant.

Lewis Steele, Buffalo, N.Y., for plaintiffs-appellees.

Before KAUFMAN, MINER and DAVIS,* Circuit Judges.

MINER, Circuit Judge:

I.

Defendant-appellant State of New York ("State") appeals from a Decision–Order of the United States District Court for the Western District of New York (Curtin, Ch. J.) holding "in abeyance," pending completion of discovery in the action, its motion to dismiss the complaint on the ground of eleventh amendment immunity. Finding that the Order is appealable, and that the State is entitled to an immediate determination of its claim of immunity in this case, we reverse and remand for a ruling on the motion.

* Honorable Oscar H. Davis, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

## II.

According to the complaint, plaintiffs-appellees, James and Marion Smith ("the Smiths"), reside with their minor son, plaintiff-appellee Spencer Smith, at premises bordering Bergenholtz Creek in the City of Niagara Falls, New York. The Smiths allege that their property has been contaminated by chemicals emanating from the Love Canal landfill, where more than twenty-one thousand tons of chemical waste were dumped by the Hooker Chemicals & Plastics Corp. during the period 1942–1953. They contend that the chemical wastes passed from the groundwater beneath the landfill through storm sewer lines into the Bergenholtz Creek and thence to their lands. The Smiths' property line extends to the center of the Creek and therefore encompasses a portion of the Creek bed.

The dangerous chemical contamination at Love Canal impelled the President of the United States to declare the existence of an emergency at that location in March of 1980. In accordance with the provisions of the Disaster Relief Act of 1974, 42 U.S.C. § 5121 *et seq.*, the President directed the Federal Emergency Management Agency ("FEMA") to provide federal emergency assistance and relief, including relocation and temporary housing, for those affected by the conditions at Love Canal. Among other things, FEMA established the boundaries of the area where federal aid would be provided. 45 Fed.Reg. 37,733 (1980); *see* 44 C.F.R. pt. 205 (1986). The northern boundary of the emergency assistance area was fixed at the midline of the Bergenholtz Creek. Since the Smiths' property extends north from the mid-line of the Creek, it did not fall within the designated area. The complaint alleges that the boundaries were fixed on the basis of information furnished to FEMA by the United States Environmental Protection Agency ("EPA").

On June 9, 1980, FEMA and the State of New York entered into a Federal–State Disaster Assistance Agreement, establishing a program to provide emergency benefits to those in the previously defined disaster area. In order to provide for the permanent relocation of residents of the affected area, Congress authorized the President to take such steps as were necessary to accomplish that purpose, allocating the necessary funds as part of the Supplemental Appropriations and Rescission Act of 1980, Pub.L. No. 96–304, 94 Stat. 857, 876. The congressional legislation adopted the boundaries originally established by FEMA to define the area whose residents would be eligible for relocation assistance. As noted previously, the Smiths' property was not included within those boundaries.

The legislation authorizing the Love Canal Area Permanent Relocation Program provided that the federal share of the program would not exceed 75% of the cost of relocation. After the President approved the legislation in July of 1980, he entered into an agreement with the State of New York to share the cost of the program and directed that the federal funds appropriated be made available through FEMA. For the purpose of administering the relocation assistance contemplated by the agreement, the State of New York created the Love Canal Area Revitalization Agency ("LCARA"). The LCARA was established as a public benefit corporation under the provisions of New York General Municipal Law § 950(1).

The Smiths complain that they were improperly excluded from participating in the benefits of the Love Canal Area Permanent Relocation Program by the arbitrary establishment of the disaster area boundaries. Named as defendants in their complaint are the President of the United States; the Director of FEMA; the Administrator of the EPA; the LCARA; and "The State of New York, by its Governor, Mario Cuomo." In their prayer for relief, the Smiths seek judgment declaring that the relocation program is unconstitutional; directing the LCARA to purchase their property at "current market value, exclusive of the presence of the Love Canal"; enjoining the President, FEMA and the State of New York from interfering with the purchase of their property under the relocation program; declaring that the boundaries established by FEMA for the emergency assistance area are unconstitutional as applied to

them; declaring that the boundaries were established by a process that was arbitrary, capricious, an abuse of discretion and contrary to the policies of the Disaster Relief Act of 1974; ordering FEMA to make available to them the emergency assistance available to resident homeowners within the designated area; and ordering the President, EPA and FEMA to pay their costs and disbursements, including attorneys' fees. The claims pleaded in the complaint are bottomed on the denial of equal protection and violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

By notice of motion filed on June 6, 1987, the State of New York sought dismissal of the complaint for lack of jurisdiction, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim, Fed.R.Civ.P. 12(b)(6). It was and is the State's contention that the plaintiffs' claims are barred by the eleventh amendment prohibition against suits by citizens against states in federal courts. Specifically, the State asserts that the district court is without jurisdiction to provide any of the relief sought against it in this action, since it has not waived its eleventh amendment immunity and Congress has not specifically abrogated that immunity with regard to the type of claims pleaded in the complaint. The Smiths contended in the district court, as they do here, that they have pleaded no claims against the State of New York, but only against its Governor, whose future conduct they seek to enjoin.

In its Decision and Order dated April 23, 1987, the district court ruled on the State's motion as follows: "After careful consideration of the papers, this court declines to rule on the State's motion pending completion of discovery in this case. Therefore, this motion will be held in abeyance for the present time." Slip op. at 11. Before us is an appeal from that determination. Appellees urge us to decline to entertain the appeal because no claims or demands of any kind have been made against the State in this action and because there has been no decision on the motion in the district court.

## III.

Generally, orders denying motions to dismiss for lack of jurisdiction or for failure to state a claim are not appealable for lack of finality. *See* 28 U.S.C. § 1291 (1982). However, the collateral order doctrine permits interlocutory appeals from district court decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The doctrine has been applied to allow interlocutory appeals from denials of substantial claims of absolute immunity, *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and from denials of claims of qualified immunity turning on questions of law, *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

█ The eleventh amendment confers immunity upon states from suits in federal courts brought against them by their own citizens as well as by citizens of other states, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), unless a state waives its immunity, *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), or Congress specifically abrogates it under section 5 of the fourteenth amendment, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 (1976). We have held that decisions regarding eleventh amendment immunity may be tested on appeal under the collateral order doctrine. *Minotti v. Lensink,* 798 F.2d 607 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987). As we see it, a state has a right to an early determination of the issue because "the essence of the immunity is the possessor's right not to be haled into court—a right that cannot be vindicated after trial." *Id.* at 608.

█ The State of New York is a party to this action, despite appellees' argument to the contrary. It is named in the caption as

a party defendant, the words "by its Governor, Mario Cuomo" being mere surplusage. Moreover, the prayer for relief asks the court to "[e]njoin ... the State of New York from taking any action to halt the purchase of the plaintiffs' aforesaid property pursuant to the Love Canal-area Permanent Relocation Program." The complaint itself alleges that "it is necessary that New York State be a defendant in this action so as to effectuate complete relief to the plaintiffs herein." Accordingly, the State of New York, as a party defendant, is entitled to an adjudication of its eleventh amendment immunity defense.

The failure of the district court to decide the State's motion does not alter the State's right to have an early determination of its claim of immunity. By holding the decision in abeyance pending the completion of all discovery in the case, the district court effectively denied that right. If successful on its motion, the State would be exempted from participating in *any* pre-trial procedures. It is noteworthy that appellees, in their brief and at oral argument, disclaimed any intention of deposing the State. There is, therefore, no present impediment to a decision on the motion in the district court. If there were a showing of some need for discovery or other pre-trial proceedings related to the eleventh amendment immunity issue, our determination as to appealability might very well be different. The purpose of early determinations of immunity defenses is, after all, to lift the burdens of litigation from a defendant who should not be a party at all.

### IV.

We therefore hold that an order holding in abeyance a motion to dismiss on immunity grounds, without some reason related to the disposition of the motion, is appealable. In this case we reverse and remand with a direction that the district court determine the State's motion forthwith. *See Craft v. Wipf,* 810 F.2d 170, 173 (8th Cir.1987) (per curiam); *see also Helton v. Clements,* 787 F.2d 1016, 1017 (5th Cir.1986) (per curiam).