### In re OPERATION OPEN CITY, INC., Debtor.

### The OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OPERATION OPEN CITY, INC., Plaintiff,

### v.

### The NEW YORK STATE DEPARTMENT OF STATE, Defendant.

**Bankruptcy No. 89–B–12378 (BRL).**
**Adv. No. 92–8092A.**

United States Bankruptcy Court,
S.D. New York.

Dec. 14, 1992.

As Amended Dec. 30, 1992.

Winthrop, Stimson, Putnam & Roberts, New York City by Glenn E. Siegel, Anne M. Carley, for debtor.

Todtman, Young, Tunick, Nachamie, Hendler, Spizz & Drogin, P.C., New York City by Alex Spizz, for Official Creditors' Committee.

Robert Abrams, New York City by David S. Cook, Laura Nath, for New York State Dept. of State.

MEMORANDUM DECISION ON DEFEN-
 DANT'S MOTION TO DISMISS AND
 DEBTOR AND CREDITORS' COM-
 MITTEE'S MOTIONS FOR SUM-
 MARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

Bankruptcy is a collective process in which all parties share in an inevitably

inadequate estate. The bankruptcy court is the forum in which all parties resolve disputes regarding distribution of estate assets. This process, however, cannot function properly if any significant participant remains immune from the system's fundamental rules. This adversary proceeding involves a governmental unit which has extracted funds from a debtor's estate without seeking prior court approval and now claims that sovereign immunity precludes this Court from reviewing the governmental unit's actions.

## I. Statement of Facts

The debtor, Operation Open City, Inc. (the "Debtor"), is a not-for-profit corporation which, among other things, rehabilitates residential buildings in New York City. The Debtor, acting as a general contractor, entered into several contracts with the State of New York to refurbish apartment buildings and hired subcontractors to perform the work.[1] On February 8, 1988, the Debtor entered into a contract, designated 88 DOE/EXXON C007205 (the "Contract"), with the New York Department of State (the "State") to provide certain apartment buildings with weatherization services. Pursuant to the Contract, the State was permitted to setoff certain amounts owed to the Debtor under the Contract against any amounts owed by the Debtor to the State under any other agreement entered into between the Debtor and the State.

An involuntary chapter 7 petition was filed against the Debtor on September 19, 1989. On October 27, 1989 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Code and an order for relief was entered. As of the Petition Date, the State owed the Debtor $242,210 for services rendered under the

Contract. The State subsequently performed an audit with respect to certain other contracts which the Debtor entered into with the State between 1984 and 1988 and which were not related to the Contract (the "Unrelated Contracts"). The State's audit revealed that the Debtor owed the State $184,704 pursuant to the terms of the Unrelated Contracts. The State setoff this amount from the $242,210 owing to the Debtor under the Contract, sending the Debtor $57,506 as "full and final payment" for the State's obligations under the Contract.

It is not disputed that the Debtor owed the State $187,706 pursuant to the Unrelated Contracts, and that the State neither sought this Court's permission to effect a setoff nor filed a proof of claim with respect to the Debtor's obligations under the Unrelated Contracts.[2] The Debtor and the Official Committee of Unsecured Creditors (the "Committee"), which is comprised largely of unpaid subcontractors, now seek turnover of the $184,704 (the "Disputed Funds" or "Funds").

The Committee began this adversary proceeding by seeking, and receiving, permission from this Court to institute an action for turnover of the Disputed Funds for administration in bankruptcy. The Committee's complaint alleges the following four causes of action. First, the State must turnover the Disputed Funds pursuant to § 542(a) of the Code because the Funds are assets of the Debtor's estate. Second, the State violated the automatic stay by effecting the post-petition setoff, and the Debtor is entitled to damages for the State's willful violation of the stay. Third, the State was precluded from effecting a setoff pursuant to § 553(a) of the Code because there was lack of mutuality of debts between the State and the Debtor.

---

**1.** Article 3–A of New York's Lien Law ("Article 3–A") provides that certain funds paid to a general contractor for work performed by the subcontractors are held in trust for the benefit of the subcontractors. New York Lien Law §§ 70–79–a (McKinney 1992). Although resolution of the instant adversary proceeding does not require an analysis of the subcontractors' Article 3–A rights in certain funds paid to the Debtor, the parties have based certain alternative claims

for relief upon the subcontractors' alleged Article 3–A rights.

**2.** The only claim on file for the State of New York is that of the New York State Department of Taxation, which filed a proof of claim, designated claim number 81, for withholding taxes allegedly owed by the Debtor.

The Committee alleges that Article 3–A provides that the Disputed Funds were held in trust for the benefit of subcontractors, and that the Debtor was only entitled to the Disputed Funds in its capacity as an Article 3–A trustee. Fourth, the State converted Article 3–A trust funds by taking a setoff with respect to the Disputed Funds.

The State alleges that it is immune with respect to this proceeding pursuant to the Eleventh Amendment to the United States Constitution and has moved to dismiss the complaint for lack of subject matter jurisdiction. In the alternative, the State seeks to dismiss the complaint for failure to state a claim upon which relief may be granted, and alleges the following. First, any action that the Committee or Debtor might bring under Article 3–A is barred by the statute of limitations. Second, assuming that the Disputed Funds are Article 3–A trust funds, they are not property of the Debtor's estate and therefore this Court has no authority to adjudicate competing interests in the funds. The Committee responded to this motion to dismiss by moving for summary judgment. The Debtor has since joined the fray and has filed its own motion for summary judgment seeking, *inter alia*, turnover of the Disputed Funds.

The State failed to respond to the summary judgment motions until notified by the Court that it was prepared to rule on both the State's motion to dismiss and the summary judgment motions. The State subsequently filed a response to the summary judgment motions but nevertheless continues to assert that this Court should ignore the summary judgment motions and rule solely upon the State's motion to dismiss. *See, infra,* Section II.

Although the State continues to assert that the doctrine of sovereign immunity prevents this Court from ordering turnover of the Disputed Funds, it has apparently abandoned a legal argument that was predicated upon the subcontractors' alleged Article 3–A rights. At the outset of this proceeding the State argued that if the Disputed Funds were Article 3–A trust funds, such Funds were not assets of the

Debtor's estate and therefore not subject to this Court's jurisdiction. If the State had prevailed with respect to this argument, however, it would have taken an improper setoff against assets which should have been distributed to the subcontractors. *See In re Johnson,* 960 F.2d 396, 401 (4th Cir.1992); *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962, 968 (5th Cir.1983). Therefore, absent sovereign immunity, the State no longer appears to question this Court's authority to determine the respective parties' rights in the Disputed Funds.

## II. Motion to Dismiss and Summary Judgment

As previously noted, the State moved to dismiss the adversary proceeding and the Debtor and Committee responded by moving for summary judgment. The State contends that sovereign immunity requires this Court to first address the State's immunity claim and precludes concurrent consideration of the summary judgment motions. *See Harris v. Deveaux,* 780 F.2d 911, 913 (11th Cir.1986) ("Absolute immunity is meant to protect not only from liability, but from going to trial at all.") *cited in Minotti v. Lensink,* 798 F.2d 607, 608 (2d Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987). The facts and procedural posture of this case, however, allow the Court to consider the State's motion to dismiss for lack of subject matter jurisdiction in conjunction with the summary judgment motions without violating the State's alleged immunity.

A state's right to the early determination of its claim of sovereign immunity, *Smith v. Reagan,* 841 F.2d 28, 30 (2d Cir.1988), in no way entitles it to an analysis of its alleged immunity in a vacuum, isolated from the facts which very well may have resulted in waiver of such immunity. The State has raised the sovereign immunity defense in its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), as made applicable herein by Federal Rule of Bankruptcy Procedure 7012. While a Court must consider the plaintiff's well pled allegations as true for

the purposes of a Rule 12(b)(6) motion to dismiss, *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992), these same allegations, when challenged by a Rule 12(b)(1) motion questioning the "actual existence of subject matter jurisdiction," must be viewed as mere allegations. *Trentacosta v. Frontier Pacific Aircraft Indus.,* 813 F.2d 1553, 1558–59 (9th Cir.1987) (quoting 5 Wright & Miller, *Federal Practice and Procedure,* § 1363 at 653–54 (1969)); *see also McCarthy v. U.S.,* 850 F.2d 558 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); 2A J. Moore *Moore's Federal Practice,* § 12.07[2.1] at 12–45–48 (2d ed. 1991). The Court may then consider materials and facts outside the pleadings and such review does not convert the Rule 12(b)(1) motion into one for summary judgment. *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983); *see also Festa v. Local 3 Int'l Brotherhood of Electrical Workers,* 905 F.2d 35, 38 (2d Cir.1990).

The following discussion, *see, infra,* sections III–VI, reveals that the aforementioned discrete set of facts relates to both the State's waiver of immunity and those legal issues raised by the summary judgment motions. The State has not suffered any hardship in responding to the summary judgment motions, as an examination of the record reveals that there are no material facts in dispute [3] and the following discussion clearly illustrates that the State's opposition has not required exploration of uncharted areas of the law. Therefore, as consideration of the summary judgment motions does not hale the State into Court beyond the scope of those facts and legal issues raised in its own motion to dismiss, contemporaneous review of the motion to dismiss and the summary judgment motions does not violate the State's alleged immunity.

The Court will consider the legal issues raised by each motion in light of the appropriate legal standards. As noted above, the State has raised the sovereign immunity defense and moved to dismiss the Committee's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The State has also moved to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). In accordance with the aforementioned standards, the Court has considered the plaintiff's allegations as merely evidence for purposes of the Rule 12(b)(1) motion, and as true for purposes of the Rule 12(b)(6) motion. This distinction, however, is largely a formality in the context of this adversary proceeding because the record reveals that there are no disputed issues of material fact. Furthermore, it is well settled that when challenged by either a Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss, "[a] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02).

The Committee and the Debtor have each moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), which is made applicable to adversary proceedings in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 7056. Rule 56 provides that summary judgment should be granted to the moving party if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106

---

**3.** The parties have submitted statements of material facts not in dispute pursuant to S.D.N.Y. Local Bankruptcy Rule 13(h). Local Rule 13(h) instructs a party moving for summary judgment to submit a concise statement of the material facts as to which it contends there are no genuine issues to be tried. The party opposing the motion, in turn, is required to submit a statement of material facts as to which it contends there are genuine issues to be tried. All material facts set forth in the moving party's statement are deemed to be admitted unless controverted by the opposing party's statement.

S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The court's role in considering a motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the nonmoving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). As previously noted, no genuine dispute exists as to any material fact, and the parties simply dispute the propriety of the State's setoff of the Disputed Funds.

*III. Sovereign Immunity*

■ The State asserts that the Committee's complaint should be dismissed for failure to state a claim upon which relief may be granted because the Eleventh Amendment to the Constitution of the United States shields the State from liability in this action. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. Nevertheless, a Federal Court can properly exercise jurisdiction when a state waives sovereign immunity, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984), or when Congress unequivocally abrogates immunity by exercising a power granted under the Constitution. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 240, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985). Thus, absent waiver or statutory abrogation of sovereign immunity, the State is immune from liability in this proceeding.

■ Section 106(a) of the Bankruptcy Code provides a limited waiver of sovereign immunity, *United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *995 Fifth Avenue Associates, L.P. v. New York State Dept. of Taxation and Finance (In re 995 Fifth Avenue Associates, L.P.)*, 963 F.2d 503, 509 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992), and provides that:

> A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106(a). The New York Department of State, the agency which setoff the Disputed Funds, has not filed a formal proof of claim.[4] Nevertheless, this Court must decide whether the State's setoff of the Disputed Funds, made "without resort to the proof of claim mechanism," *Sullivan v. Town & Country Home Nursing Service, Inc. (In re Town & Country Home Nursing Services, Inc.)*, 963 F.2d 1146, 1150 (9th Cir.1992) (*"Town & Country"*), constituted a waiver of sovereign immunity pursuant to § 106(a).[5]

---

**4.** As previously noted, the Department of Taxation and Finance has filed a proof of claim. *See, supra,* n. 2. Since this claim does not arise out of the same transaction which regards the Disputed Funds, this Court need not consider whether the filing of a claim by one state agency waives sovereign immunity as to all agencies of that state. *Compare In re Saint Mary Hospital,* 125 B.R. 422, 425 (Bankr.E.D.Pa.1991) ("We ... hold that, where any of a state's agencies has filed a proof of claim in a bankruptcy case, that state has consented to the jurisdiction of the federal courts as to its claims *inter se* with the Debtor. Since claims have been filed by agencies of the [state] in this bankruptcy case, any relief, even a 'monetary recovery,' may be had by the Debtor against the State.") *with In re*

*Four Seasons Care Centers, Inc.,* 119 B.R. 681, 683 (Bankr.D.Minn.1990) ("the filing of a claim by one state department or agency does not ordinarily waive sovereign immunity as to others or as to the state as a whole. It constitutes only a partial waiver as to the particular department or agency filing the proof of claim.")

**5.** Asserting a claim by taking a setoff can also be likened to making an "informal" proof of claim. *Town & Country,* 963 F.2d at 1153. The concept of an informal proof of claim has been recognized, in limited circumstances, by other courts within the Second Circuit. *See In re Meyers,* No. 90 B 11634 (Bankr.S.D.N.Y. filed August 18, 1992) (complaint opposing debtor's discharge and objecting to discharge of claim may be treated as informal proof of claim); *In*

In a case with largely indistinguishable facts and compelling logic, the Ninth Circuit Court of Appeals, in affirming that Circuit's Bankruptcy Appellate Panel, recently held that "a proof of claim need not necessarily be filed to trigger the waiver of sovereign immunity set forth in Section 106(a)." *Id.* at 1151 (affirming *Town & Country Home Nursing Service, Inc. v. Blue Cross of California (In re Town & Country Home Nursing Services, Inc.),* 112 B.R. 329 (9th Cir. Bap 1990) (*"Blue Cross"*)). The Court of Appeals held that the federal government's post-petition setoffs of funds due to a debtor against amounts allegedly owing to the government were:

> the functional equivalent of filing a claim and that [the setoffs] were sufficient to waive sovereign immunity under 11 U.S.C. § 106(a). To hold otherwise would enable the government to achieve by self-help what it could not accomplish through the procedures of the bankruptcy court, *i.e.*, retain its immunity while extracting payment from the estate. The government had a choice concerning whether to force distribution from [the debtor's] assets, and it chose to do so by pursuing post-petition offsets. Congress made the consequences of this action clear in the final language of section 106(a), and the government cannot now ask us to raise a shield of immunity between it and the estate.

*Id.* at 1153. This Court finds the reasoning of the Ninth Circuit and the Bankruptcy Appellate Panel persuasive and applicable with respect to a state's waiver of immunity. *See Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1014 ("Congress made clear in § 106 ... that State and Federal sovereigns are to be treated the same for immunity purposes."); *see also Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 114, 109 S.Ct. 2818, 2829, 106 L.Ed.2d 76 (1989) (Stevens, J., dissenting)

("It is well settled that when the Federal Government waives its sovereign immunity, the scope of that waiver is construed liberally to effect its remedial purposes. [citations omitted] The same rule should be applied under this section when the defendant is a State, rather than the Federal Government or a municipality.")

The State maintains, however, that *Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), compels this Court to rule that sovereign immunity bars this adversary proceeding. The State notes that the plurality decision in *Hoffman* stated that "[n]either § 106(a) nor § 106(b) provides a basis for petitioner's actions here, since the State of Connecticut did not file a claim[.]" *Id.* at 101, 109 S.Ct. at 2822. *Hoffman,* however, is not controlling authority because the issue before the *Hoffman* Court was "whether § 106*(c)* of the Bankruptcy Code ... authorizes a bankruptcy court to issue a money judgment against a State that has not filed a proof of claim in the bankruptcy proceeding." *Id.* at 98, 109 S.Ct. at 2821 (emphasis added). As the Ninth Circuit emphasized in *Town & Country,* the bankruptcy trustee in *Hoffman* "relied solely on subsection (c) in bringing a turnover proceeding under § 542(b)[,]" and therefore the *Hoffman* Court did not consider subsection (a)'s applicability. *Town & Country,* 963 F.2d at 1152 n. 2.

The State also claims that the Second Circuit's decision in *995 Fifth Avenue,* 963 F.2d 503, precludes this Court from holding that the State waived its immunity by taking a setoff with respect to the Disputed Funds. The *995 Fifth Avenue* panel, in the course of discussing waiver of sovereign immunity pursuant to § 106(a), noted that "the only reasonable construction of § 106(a) is that waiver will arise only if a

---

re *Veilleux,* 140 B.R. 28, 29 (Bankr.D.Conn.1992) (creditor's motion for relief from the stay may be treated as informal proof of claim). Given the following discussion, this Court need not consider whether a setoff, such as that which occurred in *Town & Country* and in the instant case, establishes an informal proof of claim

which waives a State's immunity with respect to claims arising out of the same transaction. *See Town & Country,* 963 F.2d at 1153–54, and *Town & Country Home Nursing Service, Inc. v. Blue Cross of California (In re Town & Country),* 112 B.R. 329, 334 (9th Cir. Bap 1991), *aff'd sub. nom.,* 963 F.2d 1146 (9th Cir.1992).

claim is actually filed." *Id.* at 509 n. 1.[6] However, the Second Circuit did not consider the specific issue currently before the Court—namely, whether the taking of a setoff from estate property is the functional and jurisdictional equivalent of a claim actually filed.

■ The setoff of the Disputed Funds was an attempt by the State to collect on a claim against the Debtor's estate without resort to the procedures and mechanisms provided for by the Code. If the State had sought this Court's permission to effect a setoff with respect to the Disputed Funds in the context of a motion for relief from the automatic stay, *see, infra,* sections V–VI, there would have been no question that the State would have waived sovereign immunity with regard to claims that "arose from the same transaction or occurrence that formed the basis of the governmental unit's claim." *995 Fifth Ave.,* 963 F.2d at 508; *see also Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 882–84, 27 L.Ed. 780 (1883); *Gardner v. New Jersey,* 329 U.S. 565, 574–75, 67 S.Ct. 467, 472–73, 91 L.Ed. 504 *reh'g denied,* 330 U.S. 853, 67 S.Ct. 768, 91 L.Ed. 1296 (1947). The State, however, after attempting an end run around the entire claims reconciliation process, now seeks to use sovereign immunity as a shield, effectively preventing this Court from reviewing the propriety of the State's actions. The only reasonable and logical response to this assertion is that just as § 106(a) provides that a governmental unit, seeking to collect on a claim against the debtor, waives its immunity by participating in a bankruptcy proceeding, *995 Fifth Avenue,* 963 F.2d at 509, a governmental unit also waives its immunity when it actually recovers on its claim without resort to procedures set forth in the Code. Any other interpretation of the

scope of § 106(a) would vitiate § 106(a)'s central purpose and function; namely, "to prevent a governmental unit from receiving a 'distribution from the estate without subjecting itself to any liability it has to the estate' arising from the same transaction or occurrence upon which its right to distribution is based." *995 Fifth Avenue Assoc., L.P. v. New York Dept. of Taxation and Finance (In re 995 Fifth Avenue Assoc., L.P.),* 116 B.R. 384, 391 (Bankr. S.D.N.Y.1990) (quoting *Prudential Lines, Inc. v. United States Maritime Admin. (In re Prudential Lines, Inc.),* 79 B.R. 167, 180 (Bankr.S.D.N.Y.1987) (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 29–30 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 29–30 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 5990–92, 5814–16)), *aff'd,* 127 B.R. 533 (S.D.N.Y.1991), *aff'd in part, rev'd in part,* 963 F.2d 503 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992); *see also West Virginia v. Hassett (In re O.P.M. Leasing Serv., Inc.),* 21 B.R. 993, 1003 (Bankr.S.D.N.Y.1982). ˙ Therefore, this Court finds that the State waived its sovereign immunity pursuant to § 106(a) by exercising its claimed right of setoff against the Disputed Funds.

## IV. Article 3–A and the Debtor's Estate

■ The State initially argued that if the Disputed Funds were Article 3–A trust funds, they were not property of the Debtor's estate and therefore this Court did not have jurisdiction to review the State's setoff of the Disputed Funds. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss at 8–11. As the adversary proceeding progressed, the State found that it was arguing that it was entitled to setoff funds against the Debtor while claiming that the funds belonged to

---

**6.** The Ninth Circuit noted that "subsection (a) refers only to a 'claim' and does not differentiate between those that have been filed and those that are not." *Town & Country,* 963 F.2d at 1150. In fact, as the Bankruptcy Appellate Panel for the Ninth Circuit recognized, an early draft of § 106(a) provided, in pertinent part, that "[a] governmental unit *that files a proof of claim under section 501 of this title* is deemed to have waived sovereign immunity with respect to

any claim against such governmental unit...." H.R.Rep. No. 8200, 95th Cong., 1st Sess. 324 (1977); S.Rep. No. 2266, 95th Cong., 2d Sess. 313 (1978) (emphasis added) *reprinted in* App. 3 *Collier on Bankruptcy* §§ III, VII (Lawrence P. King, ed., 15th ed. 1991); *see Blue Cross,* 112 B.R. at 333. The express requirement that a governmental unit file a proof of claim was deleted prior to § 106(a)'s enactment. *See* 11 U.S.C. § 106(a); *Blue Cross,* 112 B.R. at 333.

the Debtor's creditors. Apparently realizing this argument's inherent flaw, the State now claims that Article 3–A is irrelevant.

For purposes of considering the motions before the Court, however, this Court need not characterize the Debtor's interest in the Disputed Funds. The parties only seek a determination that the Disputed Funds are Article 3–A trust funds in the context of certain alternative claims for relief, which, as the following discussion indicates, the Court need not consider. However, regardless of whether the Debtor is entitled to all legal and equitable rights in the Disputed Funds or merely holds the Funds in trust for the benefit of unpaid subcontractors, the Disputed Funds are property of the Debtor's estate.

The Fourth Circuit's recent decision in *In re Johnson*, 960 F.2d 396 (4th Cir.1992), provides well-reasoned support for this conclusion. The *Johnson* court stated that both the determination that a debtor holds certain assets in trust for third parties and the subsequent distribution of the trust *res* "are intimately tied to the traditional bankruptcy functions and estate, and, therefore, are core matters within the clear jurisdiction of the bankruptcy court." *Id.* at 402. *See also Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir. 1983). This holding neither conflicts with the general rule that "the bankruptcy estate does not include 'property of others which the debtor ha[s] some minor interest such as a lien or bare legal title,'" *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir.1989) (quoting *United States v. Whiting Pools*, 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983)), nor with the proscription against distributing trust funds to prepetition creditors. *See In re Flight Transportation Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984), *cert. denied sub. nom.* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *Georgia Pacific Corp.*, 712 F.2d at 968; *Varon v. Salomon (In re Martin Fein & Co.)*, 43 B.R. 623, 626 (Bankr.S.D.N.Y.1984). In fact, the Fourth Circuit's decision serves as a necessary precursor to application of the foregoing principles, and insures that the bankruptcy court is the central forum in which disputes with respect to the rights of debtors, creditors and trust beneficiaries are resolved. *Cf. Federal Deposit Insurance Corp. v. Hirsh (In re Colonial Realty Co.)*, 980 F.2d 125, 133 (2d Cir.1992) (quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)) ("The [automatic] stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to harmonize all of the creditors' interests with one another.") If this Court, pursuant to a proper request, subsequently determines that the Disputed Funds are Article 3–A trust funds, such Funds will be distributed to the beneficiaries in accordance with the dictates of Article 3–A. *See Georgia Pacific Corp.*, 712 F.2d at 968. If, on the other hand, the Court determines that such Funds are not trust funds, these assets may be distributed to prepetition creditors. In either case, however, the Disputed Funds are part of the Debtor's estate, and this Court is the proper forum for determining the ultimate disposition of such Funds.

## V. Violation of the Automatic Stay

 The State has blatantly violated the automatic stay. The State setoff the Disputed Funds after the order for relief was entered, thereby ignoring the automatic stay which explicitly prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Case law reinforces the principle that prior to exercising a setoff under § 553, a governmental unit must obtain relief from the automatic stay. *See Small Business Administration v. Rinehart*, 887 F.2d 165, 168 (8th Cir.1989) ("a governmental agency violates the automatic stay when it 'holds' or 'freezes' payments the debtor is otherwise entitled to receive."); *United States v.*

*Reynolds,* 764 F.2d 1004, 1006 (4th Cir. 1985) (the Code "preserve[s] a creditor's right to any setoff he possesses but automatically stay[s] the exercise of that right unless the creditor obtains from the bankruptcy court relief from the automatic stay."); *United States v. Norton,* 717 F.2d 767, 771 (3rd Cir.1983); ("[B]efore a setoff can be made against the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay."). Thus, the statutory proscription against the State's unauthorized post-petition setoff is well recognized in the case law and, consequently, must have been known to the State when it effected the setoff.

▌ In fact, the State admits the violation, but characterizes it as a "mere technical" violation. Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment at 10; July 28, 1992 Transcript at 10, 25. The State's position seems to be that "mere technical" violations of the automatic stay are not prohibited, a conclusion this Court declines to adopt. The automatic stay is "one of the most fundamental protections provided [to the debtor] by the bankruptcy laws," *Midlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (quoting S.Rep. No. 989, 95 Cong., 2d Sess. 54 (1978); H.R.Rep. No. 595, 2d Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, 5840, 6296), *reh'g denied,* 475 U.S. 1090, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986), "protect[ing] debtors and creditors from 'piecemeal dismemberment' of the debtor's estate," *University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065, 1084 (3rd Cir.1992) (quoting *Computer Communications, Inc. v. Codex Corporation (In re Computer Communications, Inc.),* 824 F.2d 725, 731 (9th Cir.1987)), and allows for distribution of estate assets "in a manner consistent with the bankruptcy goal of equal treatment[ ]" of creditors. *Id.* (quoting *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1545 (2d Cir.), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990)).

The State has acted in derogation of the statutory scheme by intruding upon estate property, and when asked to answer for its actions, unilaterally determines that its conduct was proper. Given this notion of dispute resolution, it is difficult to understand the State's focus on sovereign immunity. If the State had the right to determine its legal disputes, it would not need sovereign immunity. *Cf. In re Computer Communications, Inc.,* 824 F.2d at 731 ("Judicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay.")

▌ At this point, however, the record does not justify the imposition of damages for the State's violation of the automatic stay. To the extent that the Debtor seeks damages pursuant to 11 U.S.C. § 362(h), this request is not viable, because damages authorized under § 362(h) are available only for natural persons, and the Debtor is a corporation. *Maritime Asbestosis Legal Clinic v. LTV Steel, Co., Inc. (In re Chateaugay Corp.),* 920 F.2d 183, 186–87 (2d Cir.1990).

## VI. Right to Setoff

▌ In addition to having violated the automatic stay, the State fails to comprehend that a creditor's right to setoff pursuant to § 553 of the Code is neither automatic nor absolute. As noted above, a creditor seeking to effect a post-petition setoff is required to seek relief from the stay, and it is within this context that the bankruptcy court exercises its discretion in determining whether the setoff should be allowed. *Rinehart,* 887 F.2d at 169. As the Eighth Circuit has noted, the automatic stay does not destroy the right of setoff, but stays its enforcement "pending an orderly examination of the debtor's and the creditor's rights." *Id.* (citations omitted). A review of the record reveals that the State has not moved for relief from the stay, and this Court must therefore consider the rights of the Debtor and creditors within the context of this adversary proceeding.

**194**

It is well settled that " 'actions taken in violation of the stay are void and without effect.' " *Federal Deposit Insurance Corp.*, slip op. at 7699 (quoting *48th Street Steakhouse, Inc. v. Rockefeller Center, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987) (quoting 2 *Collier on Bankruptcy* § 362.11 (Lawrence P. King, ed., 15th ed. 1987)), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988)); *see also Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir.1984). As one of my colleagues in this District has held, in the exercise of its discretion a "bankruptcy court should deny a setoff to those creditors who violate the automatic stay." *Blava In–Line, Inc. v. Midlantic National Bank/North (In re Blava In–Line, Inc.)*, 133 B.R. 33, 36 (Bankr.S.D.N.Y.1991) (Schwartzberg, J.) (citing *MNC Commercial Corporation v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 818 (2d Cir.1989)). In view of the State's violation of the automatic stay, the State must now turnover the Disputed Funds to the Debtor pursuant to § 542(a) of the Code. To do otherwise would have the practical effect of holding that there is an automatic right to setoff.

### VII. Conclusion

Therefore, in view of the foregoing, the Court concludes as follows:

1. The State waived sovereign immunity pursuant to § 106(a) of the Code by effecting a post-petition setoff with respect to the Disputed Funds.

2. Regardless of whether the Disputed Funds are ultimately determined to be Article 3–A trust funds, the Funds are property of the Debtor's estate, and this Court has jurisdiction to review acts taken against such Funds.

3. The State violated the automatic stay by effecting a setoff with respect to the Disputed Funds without seeking relief from the automatic stay.

4. The Committee and the Debtor have not demonstrated that damages for violation of the automatic stay are warranted.

5. The State must turnover the Disputed Funds to the Debtor pursuant to § 542(a) of the Code.

6. In view of conclusions 1–5, this Court need not consider the parties' alternate claims for relief.

7. Therefore, in view of conclusions 1 & 2, the State's motion to dismiss is denied.

8. The Committee and Debtor's motions are granted to the extent set forth in conclusions 3–5.

Submit an order consistent with the foregoing memorandum decision.