133 F.3d 926
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Estate of Mark ADAMS; Elsie Diaz, individually and in her
capacity as the administrator of the Estate of Mark Adams;
Anna Crosby; Joanne Norton; Chaelene Adanm; Vera June
Johnston, Plaintiffs-Appellees,
v.
James GOMEZ, Director, California Department of Corrections;
Arthur Caldero, Warden; T.S. Reynolds,
Defendants-Appellants.
 No. 96-16423.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 9, 1997.
Decided Jan. 7, 1998.
 
 1
 Before BRIGHT,** FLETCHER, and T.G. NELSON, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Defendants appeal the district court's refusal to rule on their motion to dismiss the state law claims brought against them on the basis of Eleventh Amendment immunity, and its refusal to grant summary judgment as to the Eighth Amendment claims brought against them on the basis of qualified immunity. We have jurisdiction as to the eleventh Amendment claims, 28 U.S.C. § 1291, and hold that defendants are not entitled to such immunity. We have no jurisdiction as to the qualified immunity claims because the district court's refusal to grant summary judgment was based on the existence of material issues of disputed fact.
 
 I. Eleventh Amendment Immunity
 
 4
 Immunity under the Eleventh Amendment is a question of law reviewed de novo. Micomonaco v. Washington, 45 F.3d 316, 319 (9th Cir.1995). Denial of a claim of Eleventh Amendment immunity is immediately appealable. See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993); Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183 n. 2 (9th Cir.1997). An immediate appeal is available "because the central benefit of immunity, the right not to stand trial in the first instance, is effectively lost if a case is erroneously permitted to proceed to trial." Sofamor, 124 F.3d at 1133 n. 2.
 
 
 5
 The district court, however did not deny the defendants' motion to dismiss on Eleventh Amendment grounds. Rather, it refused to rule on the issue.[1] Nevertheless, the district court's refusal to rule constituted a denial. See, e.q., Smith v. Reagan, 841 F.2d 28 (2d Cir.1988). In Reagan, the district court declined to rule on defendant's Eleventh Amendment immunity claim, asserting the need to complete discovery in the case. The Second Circuit reversed, noting:
 
 
 6
 The failure of the district court to decide the State's motion does not alter the State's right to have an early determination of its claim of immunity. By holding the decision in abeyance pending the completion of all discovery in the case, the district court effectively denied that right.... If there were a showing of some need for discovery or other pre-trial proceedings related to the eleventh amendment immunity issue, our determination as to appealability might very well be different.
 
 
 7
 Id. at 31; cf. Helton v. Clements, 787 F.2d 1016, 1017 (5th Cir.1986) holding that the district court's refusal to rule on defendant's motion to dismiss based on the defense of governmental immunity is an immediately appealable order). As in Reagan, the district court's refusal to rule on the Eleventh Amendment immunity issue in the case at hand constituted a refusal to dismiss the state law claims; no additional information was necessary in order to rule on the defendants' motion.[2]
 
 
 8
 Defendants, however, are not entitled to Eleventh Amendment immunity. Ashker v. California Dep't of Corrections, 112 F.3d 392 (9th Cir.), cert. denied, 118 S. Ct 168 (1997), controls the outcome of this case. The Eleventh Amendment does not bar federal courts from hearing pendent state law claims brought against state officials sued in their individual capacities. Id. at 395. We explicitly considered and rejected the exact argument that defendants in this case assert regarding the effect of indemnification:
 
 
 9
 [Defendants] nevertheless argue that, because California would indemnify them if they were required to pay damages to Ashker, Ashker's suit is not against them in their individual capacities. According to [defendants], because California would, in effect, be paying the damages, California is the real party in interest.
 
 
 10
 [Defendants'] indemnity argument is foreclosed by Demery v. Kupperman, 735 F.2d 1139 (9th Cir.1984). In that case, we characterized the indemnity arrangement between a state officer and the state as a "purely intramural arrangement" that should not "turn into an extension of sovereign immunity." ... Following Demery, we hold California's indemnification of [defendants] does not render California the real party in interest.
 
 
 11
 Id. (citations omitted); see also Ronwin v. Shapiro, 657 F.2d 1071, 1075 (9th Cir.1981) (holding that the state is not the real party in interest, even assuming that defendants would be reimbursed under Arizona's indemnification statute)
 
 II. Qualified Immunity
 
 12
 A district court's decision regarding qualified immunity is reviewed de novo. Elder v. Holloway, 510 U.S. 510, 516 (1994). The denial of qualified immunity at summary judgment is appealable only when an appeal would "resolve a dispute concerning an 'abstract issue of law' relating to qualified immunity." Behrens v. Pelletier, 116 S.Ct. 834, 842 (1996) (quoting Johnson v. Jones, 115 S.Ct. 2151, 2158 (1995)). Appeal of the denial is not appropriate if material issues of disputed facts, related to qualified immunity, necessitate a trial. Id.
 
 
 13
 The determination of qualified immunity involves a 2-step inquiry:
 
 
 14
 1 Was the law governing the official's conduct clearly established?
 
 
 15
 2 Under that Law, could a reasonable officer have believed the conduct was lawful?
 
 
 16
 Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993).
 
 
 17
 Defendants assert two reasons why the district court erred in denying their claims of qualified immunity at summary judgment. First, they argue that the district court impermissibly considered state of mind evidence in denying qualified immunity. We agree that disputed evidence regarding state of mind should not preclude a qualified immunity determination.[3] However, the district court also relied on a permissible ground for denying qualified immunity--that genuine issues of material fact existed as to the defendants' reasonable beliefs regarding the legality of their actions.
 
 
 18
 Defendants second argument is that a trial is not necessary as to their reasonable beliefs because reasonable officers in defendants' positions could not have known that their actions were unlawful. Although the district court did not state which disputed facts precluded a finding of summary judgment, our separate assessment of defendants' claims leads us to conclude, consistent with the district court, that the undisputed facts of this case do not compel a finding of qualified immunity at summary judgment.
 
 Officer Reynolds
 
 19
 As the district court found, the law was clear beyond dispute that a malicious and sadistic use of deadly force by a prison official against a prisoner constitutes cruel and unusual punishment under the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) When determining if an officer's behavior was reasonably objective at summary judgment, the evidence must be viewed in the light, most favorable to the nonmoving party, in this case, the Adams. See Koch, 96 F.3d at 1301.
 
 
 20
 The following are the undisputed facts.[4] Mark Adams was shot and killed by a correctional officer, T.S. Reynolds. On the day of the shooting, inmate Paul Green was the first inmate on the exercise field, followed by Adams. Although no words were exchanged by the two prisoners at that time, Adams began striking Green. Officer Reynolds gave at least one verbal warning to the inmates, and blew his warning whistle. Three shots were fired. The third shot hit Adams in the back of the head, killing him. After the incident, Green had blood on his face and a facial wound that required stitches.
 
 
 21
 At the time of the shooting California Department of Corrections (CDC) policy authorized the discharge of a firearm in the necessary defense of another person from death or great bodily injury. Reynolds had been required to qualify for the use of his weapon every 90 days, and was current with such qualifications at the time of the shooting.
 
 
 22
 These are the only facts to which the two parties stipulated. Notwithstanding the defendants' rendition of the "undisputed facts" in their brief, the Adams dispute the very circumstances with which Reynolds was faced, particularly the level of danger posed by Adams to Green, and the need to use deadly force. The Adams allege, for example, that while Reynolds testified that he saw a "shiny object" in Adam's hand, neither inmate possessed a weapon at the time of the shooting. The Adams claim that inmate Green never lost his footing or consciousness during the fight, and received only a minor, one centimeter laceration on his face as the result of the fight. While Reynolds claims that Green's hands dropped from covering his head to down by his sides, the Adams' witness claims to have seen both men exchanging blows throughout the fight. Reynolds stated that he meant only to shoot Adams in the leg, that he was shooting from above and that Adams moved his head into the line of the trajectory. The Adams, however, aver that Reynolds was only 24 feet from Mark Adams when Reynolds shot Adams in the back of the head and that Reynolds was a very good marksman.
 
 
 23
 Viewing the evidence in the light most favorable to the Adams, is we must, in order to find that Reynolds was entitled to qualified immunity, one would have to find that a reasonable prison official would purposefully shoot a prisoner engaged in a fist fight, aiming at his head, after giving a verbal warning to stop fighting, even when the fight did not pose a significant danger to either prisonerBecause a reasonable officer would not have shot Adams had the incident taken place as described by the Adams and their witnesses, the district court properly denied qualified immunity at summary judgment as to Reynolds.
 
 Gomez and Calderon
 
 24
 As the district court correctly noted, by 1994, the time of the shooting, it was clearly established that the deliberate indifference of prison officials to ensure the safety of inmates through appropriate policies, training, and supervision constitutes cruel and unusual punishment. See, e.g., Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir.1988) (holding that prison administrators' deliberate indifference to the brutal behavior of prison guards towards inmates sufficient to state an Eighth Amendment claim); Slakan v. Porter, 737 F.2d 368, 376-77 (4th Cir.1984) (denying qualified immunity to high-ranking prison officials and stating that such officials "were or should have been aware of their firmly established duty to ensure" that legitimate instruments of control, such as billy clubs, tear gas, and high-pressure hoses, were not misused); see also, City of Canton v. Harris, 489 U.S. 378, 386-87 (1988) (holding that a municipality may be liable for the application of a constitutional policy in an unconstitutional manner if the constitutional wrong resulted from a lack of training). Thus, the first prong of the test is met.
 
 
 25
 To the extent that Gomez and Calderon argue otherwise, they are misconstruing the Adams' claims against them. The issue is not whether it clearly was unconstitutional to authorize the use of firearms in prisons when "absolutely necessary," or to fail to require the use of disabling force before the use of deadly force.[5] Rather, it is whether the CDC's policy in respect to firearms use or its application; other policies of the prison which prevent prison guards from considering less deadly measures before using a firearm; and the failure to train officials in a way consistent with their own mandate to use disabling force whenever possible--singly or in combination--violate the Eighth Amendment because such policies encourage the 'use of deadly force in response to situations which present little danger of death or great bodily injury.
 
 
 26
 As to the second prong, while prison officials are entitled to deference in establishing prison rules and regulations, Whitley v. Albers, 475 U.S. 312, 321 (1986) reasonable officers could not have thought that the regulations at San Quentin, as viewed in the light host favorable to the Adams, were lawful.
 
 
 27
 The Adams provide evidence which suggests that the defendants failed to provide prison guards with effective means of controlling relatively minor prison disturbances, such as fist-fights between inmates in the exercise yard. Although the CDC's firearm policy mandated that the use of a firearm was permitted only when absolutely necessary,[6] the Adams allege that other policies of the prison reduced the ability to use non-deadly force. For example, they aver that "within seconds" of the fatal shot to Adams, 30 correctional officers were on the site, armed with batons, and that there were only two inmates on the field, Green and Adams. The Adams imply that these officers could have handled the situation without the use of a firearm. Calderon's policy, however, prohibits prison guards from entering the yard to break up fights.
 
 
 28
 Further, allegedly, a prison guard in Reynold's position is discouraged from using less drastic measures to quell prison disturbances, such as 37mm guns with rubber bullets or tear gas, because the guard must ask for prior permission to use such weapons, but can use a rifle or pistol without waiting for permission. Reynolds himself explained that his understanding of the firearm policy was that he had no choice but to shoot if an inmate ignored his verbal warning to stop, regardless of whether the inmate is involved in a fight that is not life-threatening. Also, although Reynolds in this situation fired three shots, two of which were apparently "warning" shots, the CDC policy prohibits the use of warning shots.
 
 
 29
 Having limited the guards' options to shooting at prisoners, the defendants allegedly failed to train guards to shoot at extremities, rather than to head or chest, and in fact penalized guards in training for shooting at any place other than to central mass,[7] despite their own shoot to maim policy.[8]
 
 
 30
 Defendants' claim that this court has already found that the CDC's firearm policies and practices are lawful is unpersuasive.[9]
 
 CONCLUSION
 
 31
 Tke district court erred in concluding that it could not assess defendants' Eleventh Amendment immunity claim on the basis of the pleadings; however, defendants are not entitled to such immunity.
 
 
 32
 The district court did not err in determining that genuine issues of material fact preclude a finding of qualified immunity at summary judgment for any of the three defendants. This court therefore does not have jurisdiction at this time to review the district court's decision regarding defendants' qualified immunity claims.
 
 
 33
 The district court's implicit denial of Eleventh Amendment immunity is AFFIRMED. The appeal on claims of qualified immunity is DISMISSED for lack of jurisdiction.
 
 
 
 **
 The. Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The district court apparently believed that in determining whether Eleventh Amendment immunity should be granted, it was necessary to know whether any damage award would be paid by the defendants personally, or paid out of the public treasury. Because the district court felt that the pleadings failed to address that issue, it refused to dispose of the issue in a motion for judgment on the pleadings. We note that the district court did not have the advantage of our recent decision clarifying this issue, Ashker v. California Dep't of Corrections, 112 F.3d 392 (9th Cir.), cert denied, 118 S.Ct. 168 (1997)
 
 
 [2]
 While the district court believed that it needed more information regarding the state's willingness to indemnify the defendants, as we explain below, California's willingness to indemnify the defendants does not alter the Eleventh Amendment immunity analysis
 
 
 [3]
 See Osolinksi v. Kane, 92 F.3d 934 (9th Cir.1996), (holding that "[f]or the purpose of this threshold qualified immunity analysis, we need not reach the question whether the facts alleged show that appellants acted with deliberate indifference to inmate safety."); see also P.B. v. Koch, 96 F.3d 1298, 1301 (9th Cir.1996) applying a qualified immunity analysis and stating, "[w]e consider whether, viewing the evidence in the light most favorable to plaintiffs, Koch's conduct was objectively reasonable.") (citing Behrens v. Pelletier, 116 S.Ct. 834, 837 (1996))
 
 
 [4]
 These facts are taken from the parties' Joint Statement of Undisputed Facts in Support of Motion for Summary Judgment
 
 
 [5]
 Defendants cite Clark v. Evans, 840 F.2d 876, 882 (11th Cir.1988) for the proposition that "no case has expressly held that an officer has to first shoot to main before shooting to kill." Even assuming that the Eleventh Circuit is correct, the application of such a doctrine is limited to those situations in which the officer is entitled to use deadly force in the first place. Plaintiffs in the case at hand aver that no reasonable officer in Reynold's position would have thought that he had the right to shoot to kill, and that the use of deadly force was therefore excessive. Excessive force claims explicitly consider whether the amount of force used was consistent with the perceived threat, and whether "any efforts were made to temper the severity of a forceful response." Hudson, 503 U.S. at 7
 
 
 [6]
 The policy states
 In institutions where inmates or paroles are located, firearms shall be used only when absolutely necessary to prevent or stop escapes, physically assaultive behavior, the taking of hostages, or other disturbances and disorders which present an immediate danger of escape, loss of life, great bodily injury, or damage to a substantial amount of valuable property.
 Cal.Code Regs. tit. 15, § 3276(b)(1)
 
 
 [7]
 Plaintiffs provide evidence, for example, that in firearms' training, points were subtracted from a trainees' score for shooting in a location most likely to disable rather than to kill
 
 
 [8]
 The CDC Policy states:
 When necessary to aim and fire at a person, the shot shall be aimed to disable and stop rather than to kill.
 Cal.Code Regs. tit. 15, § 3276(b)(6).
 
 
 [9]
 Miranda v. Gould, 1991 WL 90007 (9th Cir. May 30, 1991), did not involve a challenge to the CDC's policies. The plaintiff challenged only the prison guard's actions. Nor is there any indication that the plaintiff had alleged, as in the case at hand, that deadly force was being used to control situations which present little danger to inmates or prison guards
 Defendants' reliance on Smith v. Stagner, 1990 WL 163932 (9th Cir. Oct. 29, 1990) is likewise misplaced. Stagner did not involve the question of qualified immunity; rather, the court affirmed the district court's grant of summary judgment in defendants' favor because Smith conceded that he had no proof that the guards were attempting to injure him, a prerequisite for finding an Eighth Amendment violation.