# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2395

_____

Miles LaCross

*Plaintiff - Appellant*

v.

City of Duluth; Officer Anton Mark; Lt. Dan Chicos;
Unknown/Unnamed Police Officers of the City of Duluth

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 13, 2013
Filed: May 8, 2013

_____

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Miles LaCross appeals from the district court's[1] grant of summary judgment
to officer Anton Mark on LaCross's 42 U.S.C. § 1983 action alleging a Fourth

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District
of Minnesota.

Amendment violation based on an excessive use of force claim. LaCross also contends that the district court[2] should have granted his motion to amend the complaint. We affirm.

## I. Background

According to police logs, Duluth, Minnesota, police officer Anton Mark came into contact with LaCross during the early morning hours of September 17, 2006. Mark suspected that LaCross, who appeared to be a minor and who was accompanied by a young female companion, may have been drinking alcohol. Ultimately, LaCross was handcuffed and seated in the back seat of a squad car. At least two other officers were present at the scene with Mark and LaCross.

The parties offer substantially differing accounts of what next occurred. According to LaCross, one officer opened the driver's side rear door, "grabbed onto my shirt, ripped me into the seat and held me onto the back of the police car" while another officer opened the passenger's side rear door and "began tasering me from behind." According to the police report and the Taser-use report, Mark applied the Taser once, in stun-drive mode, after LaCross had kicked at the car's windows, spat, and attempted to bite Mark.[3]

On September 18, 2006, LaCross sought medical care for bruising on his wrists related to the handcuffs. He testified that he "never thought about telling [the doctor]

_____

[2]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota, to whom pretrial matters were assigned pursuant to 28 U.S.C. § 636(b)(1)(A).

[3]Mark's Taser was discharged three times in the early morning hours of September 17, 2006. LaCross challenges only the Taser application that occurred while he was handcuffed and seated in the squad car.

-2-

about the taser marks all over me or anything like that." He did not seek any treatment for injuries related to the Taser application, nor has he been diagnosed with any injuries or conditions related thereto. LaCross testified that, at some point after September 17 or 18, 2006, he began having episodes of anxiety. When asked to describe his symptoms, he replied, "My heart just starts beating, gets scared. . . . [A] weird feeling comes over me."

LaCross filed suit in September 2010, alleging federal civil rights claims and state common law claims against a number of defendants. He thereafter sought to amend the complaint to add a claim under Minnesota Statutes § 611A.79, entitled Civil Damages for Bias Offenses. The magistrate judge applied the pleading standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), and denied the motion to amend as futile. Except for the § 1983 claim alleging that Mark's application of the Taser constituted an unconstitutional use of force, all claims against all defendants were eventually dismissed from the suit.

The district court granted Mark's motion for summary judgment, holding that he was entitled to qualified immunity. In doing so, the district court determined that Mark had used a reasonable amount of force and that, even if the Taser application constituted excessive force, it was not clearly established on September 17, 2006, that the use of force resulting in only *de minimis* injuries might violate the Fourth Amendment.

## II. Discussion

### A. Summary Judgment Based on Qualified Immunity

We review *de novo* the district court's grant of summary judgment based on qualified immunity. Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011).

-3-

Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009). Determining the question of qualified immunity involves a two-part inquiry: whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and whether that right was clearly established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). We have discretion to decide which part should be addressed first, Pearson v. Callahan, 555 U.S. 223, 236 (2009), and have decided to address the latter.

In Chambers v. Pennycook, we considered whether a plaintiff's showing of "only *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment[,]" and concluded that it did not. 641 F.3d at 906. We determined that "[t]he appropriate inquiry is 'whether the force used to effect a particular seizure is "reasonable."'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)) (emphasis omitted). So although a *de minimis* use of force is insufficient to support a claim, a *de minimis* injury does not necessarily foreclose a claim. See id.

The distinction between *de minimis* force and *de minimis* injury, however, was not clear until Chambers was decided. In September 2006, when Mark deployed his Taser, "a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." Chambers, 641 F.3d at 908. LaCross has not set forth sufficient evidence to show that Mark's application of the Taser caused more than *de minimis* injury. Accordingly, Mark is entitled to qualified immunity because he did not violate LaCross's then clearly established constitutional rights.

-4-

LaCross contends that the Taser is different from other implements of force in that it can cause excruciating pain without lasting physical effects. Because it is different in kind, the argument goes, the Taser should not be judged by the physical injury it causes. LaCross argues that our post-Chambers opinion in Shekleton v. Eichenberger, 677 F.3d 361 (8th Cir. 2012), establishes that "*de minimis* injury is effectively irrelevant where an officer uses a taser on a nonresistant misdemeanant suspect." Appellant's Reply Br. 7. In other words, he argues that Chambers does not apply to excessive force claims involving Tasers. We disagree. Shekleton did not consider the extent of the plaintiff's injuries, beyond noting that the plaintiff sustained minor head injuries and was treated at a hospital. 677 F.3d at 365. The decision thus did not address whether the plaintiff suffered only *de minimis* injury, and if so, whether that injury is viewed differently because it was caused by a Taser.[4]

While mention has been made of "the unique nature of this type of weapon[,]" McKenney v. Harrison, 635 F.3d 354, 361 (8th Cir. 2011) (Murphy, J., concurring), we have not categorized the Taser as an implement of force whose use establishes, as a matter of law, more than *de minimis* injury. In Chambers, we said that "the nature of the force applied cannot be correlated perfectly with the type of injury inflicted." 641 F.3d at 906. This observation may be of special relevance regarding Taser-inflicted injuries, some of which are only minor in nature, but others sometimes severe and unexpected. Compare Cook v. City of Bella Villa, 582 F.3d 840, 850 (8th Cir. 2009) (Arrestee "sustained only minor scrapes and two taser puncture marks which did not require medical treatment."), with McKenney, 635 F.3d at 357-58 (Following Taser shock, arrestee fell from a second-story window and later died from his injuries.), and Mahamad v. Anderson, 612 F.3d 1084, 1086 (8th Cir. 2010) (Prisoner sought medical and psychiatric care for alleged injuries including

---

[4]Likewise, our opinion in Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009), did not address the question whether *de minimis* injury can support a claim for excessive force.

incontinence, impotence, and nerve damage from Taser shock to his testicle and hand.). Though it offers no aid to LaCross, the degree of injury is not dispositive after Chambers, and it is now clearly established that an officer is not entitled to qualified immunity if his use of force is excessive in the circumstances, even if the injury inflicted was minor.

## B. Denial of Motion to Amend Complaint

LaCross argues that the district court erred in applying the pleading standard set forth in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal to deny as futile his motion to amend the complaint to add a state-law claim. We find no error in the application of the pleading standard set forth in those cases, for "[w]e apply federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. JPMorgan Chase Bank, N.A., 704 F.3d 545, 548 (8th Cir. 2013).

## III. Conclusion

The judgment is affirmed.

_____