RILEY, Chief Judge,
concurring in part and dissenting in part.
Because the district court had a responsibility to provide the officials with a *703 prompt and thorough individualized determination of their right to qualified immunity, see, e.g., Stanton v. Sims, 571 U.S. -, -, 134 S.Ct. 3, 4-5, 187 L.Ed.2d 341 (2013) (per curiam), I concur in the background section of the court’s opinion (Part I) and the well-reasoned first four paragraphs of the court’s discussion section (Part II). See ante at 699-701.
Reading the rest of the majority’s opinion, it is unclear to me what “part” of the district court’s rulings the majority purports to “affirm,” ante at 699, given that the majority’s conclusion makes no mention of an affirmance, ante at 702. I would reverse the district court’s sua sponte conversion of the officials’ motion to dismiss into a motion for summary judgment; vacate the district court’s denial of the officials’ motion for summary judgment; and remand with instructions to decide whether the officials are entitled to qualified immunity, first on the pleadings under Federal Rule of Civil Procedure 12(b)(6) and, if not, then on the record under Federal Rule of Civil Procedure 56(a). To the extent the majority’s vague judgment deviates from this course, I respectfully dissent.
A. Jurisdiction
I think it important to begin by emphasizing our precedent that our court’s “jurisdiction to review the qualified immunity issue on interlocutory appeal depends upon whether the district court actually ruled on the issue.” Bradford v. Huckabee (Bradford I), 330 F.3d 1038, 1040 (8th Cir.2003) (emphasis added). A casual reader might think this statement means we lack jurisdiction unless the district court makes a merits determination as to qualified immunity, but that reading is foreclosed by Bradford I itself: we exercised jurisdiction to “remand to the district court for such a determination,” 330 F.3d at 1041 (emphasis added). The Bradford I opinion’s reference to “jurisdiction to hear th[e] appeal,” id. (emphasis added), merely meant our court would not reach the merits of a qualified immunity question in a case where the district court, whether intentionally or through neglect, failed to answer the question (i.e., “actually ruled”). As the court’s opinion explains, ante at 700-01, we have long exercised our interlocutory jurisdiction to order district courts to issue the necessary qualified immunity rulings when they fail to do so. See, e.g., Robinson v. Mericle, 56 F.3d 946, 947 (8th Cir.1995); Parton v. Ashcroft, 16 F.3d 226, 228 (8th Cir.1994); Craft v. Wipf, 810 F.2d 170 (8th Cir.1987) (per curiam).
Most circuits follow our approach. See, e.g., Wallin v. Norman, 317 F.3d 558, 563 (6th Cir.2003) (“[T]he district court’s refusal to address the merits of the defendants’ motion based on qualified immunity was a conclusive determination for the purpose of allowing an interlocutory appeal.”); Lowe v. Town of Fairland, Okla., 143 F.3d 1378, 1380 (10th Cir.1998) (same); Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir.1997) (same); Collins v. Sch. Bd. of Dade Cnty., Fla., 981 F.2d 1203, 1205 (11th Cir.1993) (same); Zayas-Green v. Casaine, 906 F.2d 18, 23 (1st Cir.1990) (same); Smith v. Reagan, 841 F.2d 28, 31 (2d Cir.1988) (same); Helton v. Clements, 787 F.2d 1016, 1017 (5th Cir.1986) (per curiam) (same). It appears only the Ninth Circuit disagrees on the jurisdictional question. See, e.g., Miller v. Gammie, 335 F.3d 889, 894-95 (9th Cir.2003) (en banc) (holding that “[district court orders deferring a ruling on immunity for a limited time to ascertain what relevant functions were performed generally are not appealable”). But the Ninth Circuit achieves essentially the same result by treating a notice of appeal from a district court’s failure to decide qualified immunity as a petition for writ of mandamus to compel the district *704 court to decide the question. See id. As our court — now joined by a majority of circuits — has recognized since at least 1989, see Craft, 810 F.2d at 173, the Ninth Circuit’s approach is unnecessarily formalistic.
B. This Case
District courts have an obligation to “re-solv[e] [qualified] immunity questions at the earliest possible stage in litigation.” Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (emphasis added). In Payne’s case, the earliest possible stage was the officials’ motion to dismiss for failure to state a claim upon which relief could be granted. The officials appropriately based their motion on qualified immunity, invoking their entitlement to be free of the burden of further litigating Payne’s claims. To rule on that motion, “[t]he district court needed to first determine whether the complaint alleged enough facts to demonstrate the violation of a dearly established statutory or constitutional right.” Bradford I, 330 F.3d at 1040 (emphasis added). Instead of making that determination and ruling on the motion by either granting or denying qualified immunity at the pleading stage, the district court refused the officials the decision — one way or the other— to which they were entitled.
On its own motion, the district court directed the officials to “supplement the record with properly authenticated evidence to show that they were censoring and confiscating [Payne’s] mail in accordance with a legitimate criminal investigation.” That sua sponte order was an abuse of discretion. The officials had a right to a qualified immunity ruling on the pleadings. See, e.g., id. To vindicate their right to such a ruling, the officials had no obligation to submit any “properly authenticated evidence.” On the contrary, qualified immunity provides “an entitlement not to ... face [such] burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated dearly established law.” Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This entitlement is so important that it may be asserted, appealed, reasserted, and again appealed at multiple stages in the same case. See Behrens v. Pelletier, 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).
As Behrens makes clear, by refusing to decide whether Payne’s “complaint alleged enough facts to demonstrate the violation of a clearly established statutory or constitutional right,” Bradford I, 330 F.3d at 1040, the district court deprived the officials of two definite opportunities and a third possible opportunity to avoid the cost and inconvenience of producing evidence. First, a decision by the district court on the pleadings that the officials were entitled to qualified immunity would obviously have freed the officials from the burden of ongoing litigation. Second, if the district court decided the officials were not entitled to qualified immunity, the officials could have immediately appealed that denial to our court. See Behrens, 516 U.S. at 307, 116 S.Ct. 834. This second opportunity to challenge the sufficiency of the plaintiffs pleadings frequently proves decisive. See, e.g., Bradford v. Huckabee (Bradford II), 394 F.3d 1012, 1016 (8th Cir.2005) (reversing a pleading stage denial of qualified immunity on appeal after the Bradford I remand). Third, if our court decided the officials were not entitled to qualified immunity, the officials could have petitioned the Supreme Court for a writ of certiorari — an unlikely but possible path to qualified immunity at the *705 pleading stage.[3] See, e.g., Ashcroft v. alKidd, 563 U.S. -, -, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (“correct[ing]” the Ninth Circuit’s “analysis at both steps of the qualified-immunity inquiry” on an interlocutory appeal from a district court’s denial of a motion to dismiss based on qualified immunity).
The district court also abused its discretion by sua sponte converting the officials’ motion to dismiss into a motion for summary judgment without deciding whether Payne’s complaint sufficiently alleged any violation of a clearly established right. It is true Rule 12(d) requires district courts to treat Rule 12(b)(6) motions as summary judgment motions under Rule 56 “[i]f, on a motion under Rule 12(b)(6)[,] ... matters outside the pleadings are presented to and not excluded by the court.” Fed.R.Civ.P. 12(d). But the only “matters outside of the pleadings” in Payne’s record were two documents the district court sua sponte compelled the officials to provide. The officials did not present any document to the court on their Rule 12(b)(6) motion.
The district court summarily declared “questions of fact remain regarding the content of [Payne’s] incoming and outgoing mail and the reasonableness of the [officials’] continued detention of that mail.” Were these questions genuinely disputed? See Fed.R.Civ.P. 56(a). Were these facts “material”? Id. The district court did not answer these relevant questions. Instead, the district court explained “[t]he record before the court does not contain copies of the letters held from October 13, 2010, to November 16, 2010.” On that basis alone, the district court denied summary judgment, without resolving qualified immunity-
The officials again moved “for a determination of their claim of qualified immunity.” (Emphasis added). The officials argued they should be “immune from further burdens of litigation absent a determination of their defense of qualified immunity based on ... clearly established law.” The officials were right. See, e.g., Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (“[T]he ‘driving force’ behind creation of the qualified immunity doctrine was a desire to ensure that “ ‘insubstantial claims” against government officials [will] be resolved prior to discovery.’ ” (second alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))).
C. Judicial Economy
Although the district court’s obligation to rule on qualified immunity is beyond debate, the majority does not content itself with following this law. Instead, the majority deems it appropriate to “write further.” Ante at 701. The majority implies that following the law and remanding for the necessary rulings in this case will waste judicial resources. The majority— after recognizing that our court should not address the merits — speculates that a denial of qualified immunity on the merits is inevitable. I cannot join these gratuitous portions of the majority’s opinion.
Even if the majority were right that following the correct procedure will “be at the expense of efficiently getting to the *706 heart of the material issue,” ante at 701, any dissipation of judicial resources stems not from our court’s following the law but from the district court’s failure to do so. Had the district court issued a reasoned denial of qualified immunity, our court could have resolved this case on the merits. Instead, the “efficient” course of action has resulted in remarkable inefficiency. In the “efficient” legal world, judges lead investigations, demand evidence, and issue orders untethered to the parties’ pleadings. This “efficient” legal world does exist in continental Europe and elsewhere on our planet. But it is foreign to our Anglo-American legal system, and (at least in cases involving governmental parties) it is prohibited by our Constitution’s federalism and separation of powers and our adherence to the rule of law. I strongly disagree with the majority’s implication that procedural rules, e.g., Fed. R.Civ.P. 12(b)(6), and legal principles, e.g., Pearson, 555 U.S. at 231, 129 S.Ct. 808, are not worth following whenever they might appear inexpedient. Even if producing the withheld mail would quickly end the case, the officials’ choice to seek a qualified immunity determination on the pleadings must be respected, and the law must be followed.
In any event, I am far from convinced the officials’ request for a qualified immunity ruling on the pleadings is as futile as the majority predicts. The equitable question whether Payne should receive his mail may very well require the district court to review the mail, but the legal question whether Payne is entitled to damages may not. Neither Payne, nor the district court, nor the majority cite a single case giving the officials “fair and clear warning” that withholding the mail at issue violated the Constitution. United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). My search of case law from the Supreme Court and the federal circuit courts disclosed none.
What I found instead were numerous cases tending to support the officials’ position. See, e.g., Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (granting prison officials “wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security”); Ahlers v. Rabinowitz, 684 F.3d 53, 65 (2d Cir.2012) (“Because of the state’s interest in treating [an inmate’s] sexual deviance, [state officials] had a justification for an embargo on” “images of children in bathing suits.”); Wishnatsky v. Schuetzle, 141 F.3d 1172 (8th Cir.1998) (unpublished per curiam) (upholding ban on mail containing images of fetuses); Dawson v. Scurr, 986 F.2d 257, 259 (8th Cir.1993) (upholding prison regulations banning publications portraying “child sex acts” and limiting access to publications involving certain adult sex acts); Bullock v. McGinnis, 14 F.3d 604, 1993 WL 533325, at *4 (7th Cir. Dec. 21, 1993) (unpublished table decision) (upholding prison officials’ decision to censor “mail that contained a photograph of an adult female partially exposing her genitalia to two clothed young children and two letters that referred to the photograph”); Harper v. Wallingford, 877 F.2d 728, 733 (9th Cir.1989) (upholding ban on mail from the “North American Man/Boy Love Association”).
Our circuit has even upheld a blanket ban on prisoners’ “receiving] through the mail secondary religious materials” and “sending] out commercially prepared greeting cards.” Jones v. Banks, 51 Fed.Appx. 608, 609 (8th Cir.2002) (unpublished per curiam). In child sexual assault cases, other circuits have gone even further — for example, upholding blanket bans on inter *707 net use post-release for defendants who, like Payne, found victims online. See, e.g., United States v. Paul, 274 F.3d 155, 169 (5th Cir.2001); United States v. Crandon, 173 F.3d 122, 127-28 (3d Cir.1999). It is difficult to imagine how a reasonable prison official reviewing such cases could expect this case’s lesser restrictions on prisoner communication to ever give rise to civil damages. The best that could be said for Payne is that the case law does not specifically address claims of the precise sort he raises because no court has ever addressed the particular circumstances of this case. But that would still leave the officials entitled to qualified immunity.
D. Qualified Immunity Principles
Like the majority, I am “sympathetic with the district court in this case,” ante at 701, but for very different reasons. I am sympathetic to the difficult task any district court confronts trying to apply the complex doctrine of qualified immunity in the face of opinions which demand a ruling, see ante at 700-01, without providing any guidance on how to reach a correct ruling. Rather than discussing the “efficiency” of not following the law, the court’s opinion should clarify how to apply this law. Having prepared some thoughts in the hope of assisting with the qualified immunity analysis, I offer the following.
A determination of the qualified immunity question at a particular stage in the proceedings does not necessarily mean a grant of immunity: often, the determination entails a reasoned denial of immunity. But without a thorough qualified immunity analysis by the district court — either granting or denying immunity — “we cannot fulfill our function of review.” Robbins v. Becker, 715 F.3d 691, 694 n. 2 (8th Cir.2013) (internal quotation omitted). Exercising our court’s “well-established ... supervisory authority over lower courts,” Starr v. Mandanici, 152 F.3d 741, 750 (8th Cir.1998), we must ensure district courts make “findings of fact and conclusions of law, similar by analogy to Fed. R.Civ.P. 52(a)(2) (addressing ‘an interlocutory injunction’), sufficient to permit our court (1) to determine what facts the district court assumed, in the light most favorable to the nonmoving party, and (2) to evaluate the district court’s individualized legal analysis.” Robbins, 715 F.3d at 694.
Qualified immunity requires district courts to answer two questions. Question one: did each individual defendant official violate a constitutional or statutory right? See, e.g., LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8th Cir.2013). Question two: was the right clearly established when the violation occurred? See, e.g., id. A district court may answer either question first. See Pearson, 555 U.S. at 236, 129 S.Ct. 808. For example, a district court could begin and end with the first question, granting qualified immunity because there was no constitutional violation. See, e.g., Burke v. Sullivan, No. 4:10CV588 CDP, 2011 WL 3235761 (E.D.Mo. July 27, 2011), aff'd 677 F.3d 367, 373 (8th Cir.2012) (affirming the “well-reasoned opinion and judgment of the district court”). Or a district court could begin and end with the second question, granting qualified immunity because, even if the defendant’s conduct violated a constitutional right, the right was not clearly established. See, e.g., Sisney v. Reisch, 674 F.3d 839, 844, 847 (8th Cir.2012) (affirming a district court’s grant of qualified immunity which “did not expressly examine the first prong,” but “[ijnstead ... focused on the second prong”). What a district court cannot do is deny qualified immunity without resolving both questions in the plaintiffs favor. See, e.g., Stanton, 571 U.S. at -, 134 S.Ct. at 4-5, 7; Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir.2009). Neither is a district court permitted to decline to *708 answer either question. See, e.g., Hunter, 502 U.S. at 227, 112 S.Ct. 534; O’Neil v. City of Iowa City, Iowa, 496 F.3d 915, 918 (8th Cir.2007).
At the pleading stage, these principles mean an individual defendant official is entitled to qualified immunity “unless [the] plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was ‘clearly established’ at the time of the challenged conduct.” al-Kidd, 563 U.S. at -, 131 S.Ct. at 2080 (emphasis added) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). At the summary judgment stage, a defendant is entitled to qualified immunity unless “(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.” Howard v. Kan. City Police Dep’t, 570 F.3d 984, 988 (8th Cir.2009). At the trial stage, a defendant is entitled to qualified immunity unless (1) the jury reasonably finds facts establishing that the defendant violated a constitutional or statutory right, and (2) the right was clearly established at the time the violation occurred. See, e.g., Luckert v. Dodge Cnty., 684 F.3d 808, 817 (8th Cir.2012).
The first question develops from stage to stage: it evolves from a construction of the pleadings, to a review of the record in the light most favorable to the plaintiff, to a deferential consideration of facts found by a jury. The second question does not change: the question is always whether the right was clearly established. “For a right to be deemed clearly established, the ‘contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.’ ” Buckley v. Rogerson, 133 F.3d 1125, 1128 (8th Cir.1998) (quoting Anderson, 483 U.S. at 640, 107 S.Ct. 3034). “‘We do not require a case directly on point’ before concluding that the law is clearly established, ‘but existing precedent must have placed the statutory or constitutional question beyond debate.’” Stanton, 571 U.S. at -, 134 S.Ct. at 5 (emphasis added) (quoting al-Kidd, 563 U.S. at -, 131 S.Ct. at 2083).
To meet their burden to show the right at issue was clearly established, “plaintiffs [must] point either to ‘cases of controlling authority in them jurisdiction at the time of the incident’ or to ‘a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.’ ” al-Kidd, 563 U.S. at -, 131 S.Ct. at 2086 (Kennedy, J., concurring) (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Without one or the other, qualified immunity applies — regardless of whether there is a factual dispute about what occurred — because the defendant did not have “fair and clear warning” that his conduct was unlawful. Lanier, 520 U.S. at 271, 117 S.Ct. 1219. This is true “whether or not the constitutional [or statutory] rule applied by the [district] court [i]s correct,” because qualified immunity applies unless the rule is “beyond debate.” Stanton, 571 U.S. at -, 134 S.Ct. at 8 (internal quotation omitted).
E. Conclusion
I respectfully dissent from whatever the majority affirms. I concur in the majority opinion’s Part I and first four paragraphs of Part II, also concurring in the reversal, vacation, and remand.

. Appealing a case does entail a litigation burden, but in advance of any obligation to submit evidence, that burden primarily falls on the lawyers whose job it is to handle such cases. By contrast, requiring defendant officials to submit evidence burdens the officials themselves: they often must find documents, answer interrogatories, undergo depositions, and prepare affidavits. The doctrine of qualified immunity ensures that corrections officials and police officers are not pulled off their rounds and beats to respond to lawsuits until a plaintiff sufficiently pleads a clearly established violation.