KELLY, Circuit Judge,
concurring.
I concur in the decision to affirm the judgment of the district court. I write separately for three reasons. First, to state clearly that, in my belief, Officer McCallum acted unreasonably in tasing Hollingsworth. Second, to highlight my concern that Hollingsworth did not, in fact, concede to the district court that she sustained merely de minimis injuries. And third, to explain that while I believe that at the time this event occurred in July 2009, it was clearly established that it was unlawful to use a Taser on an unarmed, secured, and nonthreatening misdemeanant, I recognize that I am constrained by this court’s decision in LaCross, and thus I concur.

*993
Unreasonable use of force

The majority allows that “the actions of one or more officers might have been unreasonable” and does not elaborate further — instead reaching its decision on the second prong of the qualified immunity test. In my view Officer McCallum’s actions were unreasonable. The “proper application [of the test for reasonableness] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As to the “severity of the crime,” Hollingsworth was arrested for stealing $7.38 worth of wine coolers from a gas station, a misdemeanor. Mo.Rev.Stat. § 570.030 (2015). At the time of the tasing she was neither “attempting ... flight” nor an “immediate threat to the safety of ... others.” She had been subjected to a pat-down search during her arrest and was contained in a jail cell. Officer McCallum himself testified that at no point during his encounter with Hollingsworth in the jail cell did he fear for his safety. Hollingsworth was compliant during the booking process — she testified that she removed property from her person and filled out paperwork without incident. At the time of her tasing she was sitting on a bench in her cell. I recognize that a prisoner’s refusal to change into a jumpsuit may create a security issue, but the language of the Graham test requires an “immediate threat” to safety, which was not present here. Further, while a given situation may justify the use of some force, that does not foreclose a finding that the force employed was nevertheless unreasonably excessive. Each of these factors weighs in favor of the conclusion that Officer McCallum acted unreasonably in using his Taser on Hollingsworth.
The City of St. Ann’s official Taser policy provides that “[t]he charge from the unit shall be applied to the subject until resistance has ceased, or the subject complies with the officer’s commands, and the subject is no longer a threat. Any further use is not necessary or permissible.” (Emphasis added). Training Officer Barrale testified that the city’s policy does not allow the use of a Taser for “punishment” or “coercion.” Despite this fact, Officer McCallum used his Taser — a weapon designed to immobilize its victim’s muscles— on Hollingsworth to force her to change into her clothes — an act that requires the use of one’s muscles. After the first tasing, Hollingsworth shouted “Fuck you!” and Officer McCallum immediately used his Taser on her a second time. In my view, the second tasing can be viewed as nothing other than punishment for' Hollingsworth’s insolence. See Cook v. City of Bella Villa, 582 F.3d 840, 859-60 (8th Cir. 2009) (Shepherd, J., dissenting) (arguing that it was unreasonable to “discharge [a] Taser simply because of insolence” (quotation omitted)).
Officer McCallum made, no attempt to resolve the situation with Hollingsworth in a non-violent manner. He did not assure Hollingsworth that the only person watching her change was a female officer, he did not answer her requests for a female officer to be present, and he did not allow her time to cool down or sober up. The amount of time that passed between his initial order to Hollingsworth to change out of her clothes and his use of the Taser was a matter of minutes. The second time he entered her cell he gave no warning and instead deployed his Taser three seconds after entering. From the perspective of a reasonable officer on the scene, this *994 was an unreasonable and excessive use of force.

De minimis concession

As the court notes, the district court summarily concluded that Hollingsworth’s injuries were de minimis by citing to a “concession” made by Hollingsworth on this point. The district court’s citation points to a page of Plaintiffs Amended Memorandum in Opposition to Defendant’s Motion for Summary Judgment, stating:
The pain was at a 10 on a ten scale, and the officer applied two ten second applications. To Plaintiff that amount is excessive under a reasonable person standard. But Plaintiff acknowledges that the Eighth Circuit does not believe a taser causes more than de minimis injury, LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir.2013). To the extent the Eighth Circuit has concluded that getting tased for two five second jolts is “no big deal,” Plaintiff makes a good faith argument for modification of the law.
I question the characterization of this paragraph as a “concession” that the injuries Hollingsworth received from the Taser were merely de minimis. Acknowledging that Eighth Circuit precedent may construe her injuries as de minimis does not constitute a concession that Hollingsworth agreed her injuries were de minim-is, particularly when she goes on to argue for a change in the law.
Further, in LaCross the plaintiff “did not seek any treatment for injuries related to the Taser application, nor [was he] diagnosed with any injuries or conditions related thereto.” LaCross, 713 F.3d at 1157. Even if we take LaCross to be a declaration that Tasers do not per se cause greater than de minimis injuries, the argument remains that Hollingsworth experienced greater than de minimis injuries as a result of being tased in this instance. The pain from the two tasings caused Hollingsworth to urinate herself. Following the incident she experienced leg spasms serious enough that she visited a hospital and was prescribed muscle relaxants. I also note that the officer who employed the Taser against Hollingsworth described the pain as a “ten” on a scale from one to ten. Our case law provides several examples of instances in which the use of a Taser resulted in more than de minimis injuries. See, e.g., De Boise v. Taser Int’l, Inc., 760 F.3d 892, 896 (8th Cir.2014) (resulting in death); McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir.2011) (resulting in death); Mahamed v. Anderson, 612 F.3d 1084, 1086 (8th Cir.2010) (resulting in incontinence, impotence, and nerve damage).
It appears from her briefing, however, that Hollingsworth has abandoned any argument that her injuries were above and beyond the injuries alleged in LaCross, and thus I agree with the court that she is limited by our ruling in that case:

Clearly established prohibition

Finally, I write to express my belief that at the time of Hollingsworth’s tasing in July 2009, it was clearly established that it was unlawful to use a Taser on an unarmed, secured, and nonthreatening misdemeanant. Were I not constrained by precedent, I would decline to extend qualified immunity to Officer McCallum. See LaCross, 713 F.3d at 1157-58.
In Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir.2009), this court found that it was unreasonable for the officer to have deployed his Taser and held that:
the law was sufficiently clear [in 2005] to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone’s safety, and whose only noncompliance with the officer’s *995 commands was to disobey two orders to end her phone call to a 911 operator.
(Emphasis added). The court determined that the law was clear because “[t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment’s prohibition against unreasonable searches and seizures.” Id. “Moreover, it is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of officers or the public.” Id. (citing Casey v. City of Fed. Heights, 509 F.3d 1278 (10th Cir. 2007) (finding that it was not reasonable for officer to employ Taser under clearly established law)).
It is true, as the court points out, that Brown did not analyze whether the injuries received by the plaintiff in that case were more than de minimis, but I do not believe this is a reason to ignore its precedential value. Indeed, in Shekleton v. Eichenberger, 677 F.3d 361, 367 (8th Cir. 2012) the court followed Brown’s precedent rather than rule it had been invalidated post-Chambers. The court ruled that:
at the time of the incident [in Brown], we had not yet had an opportunity to determine whether an officer’s use of a taser on a nonviolent, nonfleeing misdemeanant was an excessive use of force. However, the right to be free from excessive force dates back to the adoption of the Bill of Rights of our Constitution, as it is a clearly established right under the Fourth Amendment’s prohibition against unreasonable seizures of the person....
Shekleton, 677 F.3d at 367 (internal quotations omitted).
Accordingly, the court followed the decision in Brown, finding that the officer’s use of a Taser was unlawful, and determined that “the general law prohibiting excessive force in place at the time of the incident was sufficient to inform an officer that use of his taser on a nonfleeing, nonviolent suspected misdemeanant- was unreasonable, even though [prior to Bronm,] we did not have a case specifically addressing officer taser use.” Shekleton, 677 F.3d at 367 (citing Brown, 574 F.3d at 499-500). While the decision in Shekleton was reached after our decision in Chambers, it concerned pre-Chambers events. The Shekleton decision similarly does not use the words “de minimis,” but again I think that is not a reason to ignore its precedential weight. As recently as last year this court re-confirmed that “non-violent, non-fleeing subjects have a dearly established right to be free from the use of tasers.” De Boise, 760 F.3d at 897 (emphasis added) (citing Brown, 574 F.3d at 499-500). See also Carpenter v. Gage, 686 F.3d 644, 652-53 (8th Cir.2012) (Smith, dissenting) (reiterating that “ ‘an officer’s use of a taser on a non-violent, nonfleeing misdemeanant was an excessive use of force’ in violation of dearly established law,” (quoting Shekleton, 677 F.3d at 367) (emphasis added) and holding that the suspect’s flight risk and the safety risk to the officers and others present are considerations when determining the justified level of force); Bell v. Kansas City Police Dept., 635 F.3d 346, 347 (8th Cir.2011) (holding that whether Bell was disobeying orders to show his hands and get out of his truck was material to determining the objective reasonableness of the officer’s use of a Taser on him and citing Brown, 574 F.3d at 496-98, for the proposition that an officer’s use of a Taser was not objectively reasonable when the “passenger posed minimal security threat and was not resisting arrest or attempting to flee, officer was not faced with split second decision, and circumstances did not constitute tense, uncertain, and rapidly evolving situation”).
Each of these cases stands for the proposition that a reasonable officer would *996 have known that the use of a Taser in circumstances similar to the one at present was clearly established as unlawful: Brown concerned events that took place in 2005, and Shekleton and DeBoise concerned separate events that took place in 2008. Indeed, just five months after the incident in the present case a district court in this circuit concluded that the use of a Taser in 2006 constituted unreasonable force, reasoning:
Even if a taser does not require hospitalization or cause quantifiable injuries, it does cause extreme pain, and such pain may support a claim for excessive force.... The Eighth Circuit has noted that “extreme pain can be inflicted with little or no injury.” [Hickey v. Reeder, 12- F.3d 754, 757 (8th Cir.1993)] Just as it would be unacceptable to “permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury,” [Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)], it would also be unacceptable to permit arresting officers to use any degree of force, no matter how painful or intrusive, so long as it did not inflict some arbitrary quantity of injury.
Orsak v. Metro. Airports Comm’n Airport Police Dep’t, 675 F.Supp.2d 944, 958-59 (D.Minn.2009).
These holdings, then, must be reconciled with Chambers, which holds that prior to 2012, arrestees did not have a clearly established right to be free from unreasonable force that resulted in merely de minimis injuries. Rather than ignoring these cases, I read Brown and Shekleton as support for the view that a Taser, when effectively used, typically results in more than de minimis injuries. Prior to Chambers in 2011, this court had a line of cases holding that “the necessary level of injury is actual injury.” Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir.1995). In these cases we found that such injuries as bruised knees and elevated blood pressure, id., “posttraumatic stress disorder,” id., and a “single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf,” Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999), could support a finding of excessive force. See also Guite v. Wright, 147 F.3d 747, 750 (8th Cir.1998) (ruling that an officer grabbing plaintiffs wrist and holding him against a door could constitute unreasonable force).
Another line of cases required that the unreasonable force resulted in more than de minimis injuries, and in these cases, both before and after Chambers, we found that a wide range of arguably-minor injuries met the de minimis threshold. See, e.g., Davis v. White, 794 F.3d 1008 (8th Cir.2015) (“a concussion, scalp laceration, and bruising with almost no permanent damage” is not de minimis); Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (lacerations above the eye resulting in a hospital visit but requiring no stitches is not de minimis); Irving v. Dormire, 519 F.3d 441, 448 (8th Cir.2008) (blow to the face resulting in difficulty breathing is not de minimis).
Meanwhile, a Taser
uses compressed nitrogen to propel a pair of “probes” — aluminum darts tipped with stainless steel barbs connected to the [taser] by insulated wires — toward the target at a rate of over 160 feet per second. Upon striking a person, the [taser] delivers a 1200 volt, low ampere electrical charge ... The electrical impulse instantly overrides the victim’s central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless.
Mattos v. Agarano, 661 F.3d 433, 443 (9th Cir.2011) (quotation omitted). It is difficult to make a meaningful distinction between the aforementioned injuries and those injuries suffered by Hollingsworth. *997 See Cook 582 F.3d at 859-60 (Shepherd, J., dissenting) (stating that if-a plaintiff is required to “make a showing of some minimum level of injury in order to make out a claim for excessive force, the pain and puncture marks inflicted by the taser are sufficient to do so”).
The Brown court was well aware that “[n]ot every push or shove ... violates the Fourth Amendment.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quotation omitted). The Shekleton court reached its decision after Chambers had been published. The court in those cases nevertheless concluded that the use of a Taser was a constitutional violation.[2] Either the court concluded that the Taser caused more than de minimis injuries in each instance or it believed that a modern technological weapon designed for the particular purpose of causing excruciating pain without permanent injury was somehow in a category apart from the more traditional “pushes and shoves,” such that the Taser did not fit within the regular de minimis injury framework. See Hickey, 12 F.3d at 757 (describing the effects of a Taser as “torment "without marks”); see also McKenney v. Harrison, 635 F.3d 354, 361, 364 (8th Cir.2011) (Murphy, J., concurring) (referring to the “unique nature of this type of weapon” and warning that “[t]he Supreme Court refused to let ‘police technology ... erode the privacy guaranteed by the Fourth Amendment’ in Kyllo v. United States, [533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ], and the particular factual circumstances in which a taser has been used must be examined in the context of Fourth Amendment protections against excessive force.”).
In addition to the protections provided under the Fourth Amendment, a reasonable officer in 2009 could also have taken guidance from our decisions regarding use of a Taser in the prison context under the Eighth Amendment to understand that using a Taser on an individual in Hollingsworth’s situation was unreasonable. See Hickey v. Reeder, 12 F.3d 754, 756, 759 (8th Cir.1993) (concluding that the use of a Taser on a prisoner who refused to sweep his cell was “an exaggerated and grossly disproportionate response to his misconduct” and ruling that “[w]e have not found, and hope never to find, a case upholding the use of this type of force on a nonviolent inmate to enforce a housekeeping order.”); see also Smith v. Conway County, Ark., 759 F.3d 853, 859 (8th Cir.2014) (holding that the use of a Taser on a prisoner who refused to get up from his bunk was not a “constitutionally permissible option” (citing Brown, 574 F.3d at 497-98 (denying qualified immunity when the plaintiffs “principal offense ... was to disobey the commands to terminate her call to the 911 operator”))).
While I find this court’s decision in La-Cross to be at odds with much of our precedent outlined here, I recognize that its factual similarity to the case at hand, combined with the plaintiffs failure to plead specialized injury, forecloses the conclusion that Hollingsworth suffered greater than de minimis injuries. Thus, I concur in the decision of the court.

. This court notes that the plaintiff in Brown "alleged that she suffered bruises and welts on her arms, problems sleeping, difficulties focusing, and anxiety-related symptoms when she saw police after the incident, and that she was prescribed anti-anxiety medication.” See supra p. 8. If the implication is that these symptoms constitute a greater than de minim-is injury while Hollingsworth’s tasing, which resulted in her extreme pain and required a visit to the hospital for muscle relaxants to treat her leg spasms, does not, I cannot agree.