# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1854

_____

Kim Shultz,

*Plaintiff - Appellant*,

v.

Bryan Buchanan, individually and in his official capacity; John Does, 1-5, individually and in their official capacities as Highland City Police Officers and 6-10, individually and in their official capacities as Sharp County Deputies; City of Highland,

*Defendants - Appellees*,

Mark Counts,

*Defendant*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: January 13, 2016
Filed: July 19, 2016

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Kim Shultz sued Officer Bryan Buchanan and the City of Highland, Arkansas, pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. He alleged that Buchanan violated his rights under the Fourth Amendment by entering his home unlawfully and by using excessive force against him during an arrest. He also asserted, as relevant to this appeal, that the City was liable for maintaining an unconstitutional policy governing its officers. He brought state-law claims of felony battery and the tort of outrage against Buchanan. On motion for summary judgment, the district court* determined that Buchanan was entitled to qualified immunity on the federal claims, that Shultz failed to present any evidence supporting his claim against the City, and that the state-law claims had no merit. We affirm.

I.

On March 20, 2011, Buchanan was dispatched to Shultz's residence in response to a citizen complaint that a man had trespassed on the citizen's property and attempted to start a fight. Before Buchanan arrived at Shultz's home, Shultz and his friend, William Vaughn, had been in an altercation with two other men near a former resort community called "the beach club."

Vaughn had entered an abandoned building looking for a string or wire to use as a leash for his dog and was confronted by a man who shoved Vaughn and threatened harm if Vaughn did not leave the property. Vaughn met Shultz on the road near the abandoned building and told him what happened. The man from the building and a companion then started to walk up a hill toward Shultz and Vaughn while shouting threats at them. In response, Shultz told the men: "You need to keep your

---

*The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

asses down at the bottom of the hill 'cause if you come up here fucking with me, you're making a mistake." The approaching men said they were going to call the police; Shultz and Vaughn left for Shultz's house.

Buchanan arrived at Shultz's home thirty to forty-five minutes later. Shultz and Vaughn were sitting under the carport. Shultz's wife, Jennifer, was sitting in a truck in front of the house, listening to music. The Shultzes' three children were also home.

Shultz was upset when Buchanan arrived. He knocked his chair over when he stood up, but claimed that he was "very quiet." Buchanan believed (correctly) that both Shultz and Jennifer had been drinking, and he observed blood on Shultz's shirt. Shultz and Jennifer approached Buchanan near his patrol car. Buchanan asked Shultz what had happened at the beach club. Shultz replied that two men had confronted them, and that Shultz had told the men "that they needed to stay down at the bottom of the hill because, if they come up here fucking with me, they're making a mistake."

Buchanan told Shultz to control his attitude and asked Shultz again what happened. Shultz gave the same response, and Buchanan again told Shultz to control his attitude. Shultz, Jennifer, and Buchanan talked further, and Shultz asked Buchanan if he was under arrest. Buchanan replied that Shultz was not under arrest, and Shultz walked into his house.

After Shultz entered the house, Buchanan called for backup and asked Jennifer to go into the house and ask Shultz to come back outside. According to Jennifer, Buchanan said that he would not arrest Shultz if he came outside before the backup officers arrived. Buchanan did not believe that Shultz posed a danger to Jennifer, because they had been "getting along."

-3-

Jennifer went inside and relayed Buchanan's message to Shultz. Shultz raised his voice, told Jennifer to "shut the fucking door," and said that if Buchanan came into the house, "it would be his badge." Shultz moved toward the bedroom, tripped over a jug of cat litter, and "slung" it off to the side. Buchanan heard yelling and screaming coming from inside the house. He heard "a loud thud" that caused the windows to shake and observed children run out of the house screaming. Buchanan also heard Shultz yell that he was not coming out without a blood bath.

Buchanan then entered the house and asked Shultz if he was going to come back outside to speak with him. Shultz declined to go outside or continue speaking with Buchanan. Jennifer testified that Buchanan shoved her against a wall to move her out of the way as he followed Shultz into the bedroom. Buchanan said that when he attempted to grab Shultz to take him outside, Jennifer got between the two men and tried to push Buchanan back.

Shultz testified that Buchanan followed him into his bedroom with a Taser drawn and pointed the device at Shultz. Buchanan told Shultz that he was going to arrest him. Shultz asserted that he put his hands in the air "in surrender position" and said "that's not necessary." According to Shultz, however, Buchanan stood approximately four feet from him, said "you asked for it," and deployed the Taser. Buchanan, by contrast, states that Shultz refused to comply with orders, and that he warned Shultz that he would be tased if he did not stop resisting.

The probes of the Taser made contact with Shultz's arm, and he fell back onto the bed. Shultz sat up on the bed and moved as if to pull the Taser's probes out of his arm. Buchanan testified that Shultz broke the leads off the Taser. Shultz asserted that Buchanan yelled at him not to remove the probes, told Shultz that he "better fucking comply," and deployed the Taser a second time. Shultz testified that Buchanan deployed the Taser again a third time, applying the Taser directly to Shultz's thigh. Five to seven officers then entered Shultz's home, tackled him off of

his bed, and handcuffed him. Jennifer corroborated Shultz's account of the events, asserting that she witnessed the tasing and screamed at Buchanan to stop.

Shultz was arrested and charged with resisting arrest, fleeing, and disorderly conduct. The officers also arrested Jennifer and charged her with obstructing government operations. Shultz and Jennifer pleaded no contest to a charge of public intoxication, and the State declined to pursue the other charges. Shultz suffered some temporary marks on his legs and arms from the Taser, but neither Shultz nor Jennifer sustained any permanent injuries, and neither missed any work.

The Shultzes sued Buchanan, the City, and several other law enforcement officials. The district court eventually dismissed all claims, and only Shultz's claims against Buchanan and the City are at issue on appeal. The district court ruled that Buchanan was entitled to qualified immunity on claims that he illegally entered the home and that he used excessive force. The court also determined that Shultz failed to present sufficient evidence to support his claim against the City. Exercising supplemental jurisdiction, the court also granted summary judgment on the state-law tort claims.

We review a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Shultz. *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Supreme Court has emphasized, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation omitted). To defeat qualified immunity, the evidence must support a finding that Buchanan violated a clearly established constitutional right. "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (internal quotation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation omitted).

## A.

We first consider whether Buchanan was entitled to qualified immunity on Shultz's claim that the officer unlawfully entered his home. Buchanan argues that Shultz is barred from challenging the reasonableness of Buchanan's entry under the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that if judgment in a plaintiff's favor in a § 1983 action for damages would necessarily imply the invalidity of his conviction or sentence, then the claim is not cognizable unless the conviction or sentence previously has been set aside in another forum. *Id.* at 486-87. Success on Shultz's Fourth Amendment claim, however, would not demonstrate the invalidity of his conviction for public intoxication. All of the conduct relating to the public intoxication offense necessarily occurred in public and before Buchanan's entry into Shultz's home. *See* Ark. Code Ann. § 5-71-212. Shultz's claim is thus not barred by *Heck*.

Searches of a home without a warrant are presumptively unreasonable, *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam), but there are exceptions. One exception allows law enforcement officers to enter a home without a warrant to provide emergency assistance to an injured person or to protect a person from

imminent injury. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Buchanan invokes that justification here.

We conclude that the scenario confronting Buchanan was close enough to the line of a valid entry that he is entitled to qualified immunity. When Buchanan arrived at the residence, Shultz had been drinking. He was upset and knocked his chair over as he rose to approach Buchanan. After Shultz entered the home and Jennifer followed to see if he would come back outside, Buchanan heard Shultz yelling, children screaming, and a loud thud that sounded like someone threw something or punched the wall. Buchanan was not required to have "ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." *Fisher*, 558 U.S. at 49 (internal quotation marks omitted). Under these circumstances, a reasonable officer in Buchanan's position could have concluded that there were reasonable grounds to believe that a person in the Shultz home was in need of immediate aid. *See Anderson v. Creighton*, 483 U.S. 635, 641-43 (1987). The entry thus did not violate Shultz's clearly established rights.

Shultz argues alternatively that Buchanan's entry was unreasonable because Buchanan impermissibly created the exigency by sending Jennifer into the house. In *Kentucky v. King*, 563 U.S. 452 (2011), the Supreme Court held that the "exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable" within the meaning of the Fourth Amendment. *Id.* at 462. Buchanan's conduct met that standard. By asking Jennifer to go into her home and ask Shultz to come outside for further discussion, he did "no more than any private citizen might do." *See id.* at 469. Because Buchanan "did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment," he is entitled to rely on the emergency aid exception to justify his entry. *Id.* at 462.

B.

We next consider whether Buchanan was entitled to qualified immunity on Shultz's excessive force claim. Shultz argues that Buchanan used excessive force by deploying his Taser multiple times because Shultz's crimes were not serious or violent, he did not pose a threat, and he was not resisting arrest. Shultz also contends, relying on precedent concerning cruel and unusual punishment under the Eighth Amendment, that Buchanan unlawfully used the Taser to inflict punishment on him. *See Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993).

Shultz asserts that his claim, like those of pretrial detainees alleging unconstitutional uses of force, should be governed by the Due Process Clause of the Fourteenth Amendment. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014); *Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001). The conduct at issue here, however, occurred before and during Shultz's arrest, and it is therefore governed by the Fourth Amendment and the prohibition on unreasonable seizures. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011); *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

We may assume for the sake of analysis that Shultz has presented a genuine issue of fact concerning whether Buchanan's use of the Taser was unreasonable under the Fourth Amendment. As of March 2011, however, it was not clearly established that an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury. *LaCross v. City of Duluth*, 713 F.3d 1155, 1158 (8th Cir. 2013); *Chambers*, 641 F.3d at 908. Before our June 2011 decision in *Chambers* clarified the analytical distinction between *de minimis* force and *de minimis* injury, "a reasonable officer could have believed that as long as he did not cause more than *de minimis*

-8-

injury to an arrestee, his actions would not run afoul of the Fourth Amendment." *Bishop v. Glazier*, 723 F.3d 957, 962 (8th Cir. 2013) (quoting *Chambers*, 641 F.3d at 908). Although a Taser has a "unique capability to cause high levels of pain without long-term injury, 'we have not categorized the Taser as an implement of force whose use establishes, as a matter of law, more than *de minimis* injury.'" *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 990-91 (8th Cir. 2015) (quoting *LaCross*, 713 F.3d at 1158).

The evidence presented by Shultz about consequences of the tasing are consistent with effects that we have characterized as *de minimis* injury. Shultz sustained temporary marks on his arms and legs, but suffered no permanent scarring. He did not miss any work. Shultz argues that he experienced anxiety, nervousness, and distrust of the police as a result of the incident, but acknowledged that he had not seen a doctor or taken any medication for these symptoms. Accordingly, Shultz has not shown that he suffered more than *de minimis* injury as a result of Buchanan's actions. *See Ziesmer v. Hagen*, 785 F.3d 1233, 1237-38 (8th Cir. 2015) (stating that contusions and scrapes that heal without medical intervention are *de minimis*); *Peterson v. Kopp*, 754 F.3d 594, 601 (8th Cir. 2014) (determining that temporary pain and discomfort from pepper spray was *de minimis* where defendant had not sought medical care and the injuries resolved themselves without medical intervention); *LaCross*, 713 F.3d at 1157-58 (concluding that Taser marks for which no treatment was sought and increased anxiety was *de minimis*). Buchanan is thus entitled to qualified immunity on Shultz's excessive force claim.

## III.

Shultz argues briefly that the district court erred in dismissing his claim that the City of Highland maintained an unconstitutional policy. He points to a statement by the City's mayor that even if one believed Shultz's account of the incident, Buchanan's actions were consistent with city policy. Even assuming that the City's

policy granted officers discretion that might be employed in an unconstitutional manner, Shultz did not present evidence that the City's policy directed Buchanan to act unconstitutionally or otherwise *caused* a deprivation of Shultz's rights. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc). Therefore, the district court properly dismissed this claim.

Shultz also contends that the district court should have dismissed his state-law claims without prejudice so that he could proceed in state court. "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The district court did not abuse its discretion in electing to consider the merits of Shultz's state claims at the same time that it resolved federal claims arising from the same facts. *See Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013). Shultz does not challenge the district court's decision on the merits, and we therefore affirm the dismissal of the state-law claims.

\* \* \*

The judgment of the district court is affirmed.

_____

-10-